TRUCKEE–CARSON IRRIGATION DISTRICT *ads.* McLEAN

TRUCKEE–CARSON IRRIGATION DISTRICT *ads.* CENTRAL PACIFIC RAILWAY CO.

No. 2596

April 5, 1926.       245 P. 285.

1. WATER.

Irrigation Act of 1919 (Stats. 1919, c. 64) *held* constitutional.

2. WATER.

In so far as proceedings for organization of irrigation district are concerned, irrigation laws should be liberally construed.

3. WATER—COURT HELD NOT TO HAVE EXCEEDED JURISDICTION IN FINDING IRRIGATION DISTRICT DULY ORGANIZED.

The trial court *held* not to have exceeded its jurisdiction in adjudging and finding that an irrigation district had been duly organized and constituted, where no interested person was deprived of a single substantial right in matter of organization.

4. WATER — PROPOSED CONTRACT OF IRRIGATION DISTRICT WITH UNITED STATES FOR CONSTRUCTION BY GOVERNMENT OF DRAINAGE SYSTEM FOR DISTRICT HELD VALID.

Proposed contract between irrigation district, created and authorized under Act Cong. June 17, 1902 (U. S. Comp. Stats. sec. 4700 et seq.), and organized under Rev. Laws Nev. secs.

4723–4791, amended by Stats. 1915, c. 278, and by Stats. 1917, c. 150, with later proceedings in attempted compliance with substitute act of 1919 (Stats. 1919, c. 64), and the United States, for construction by the government of a drainage system for the district, carried by two-thirds majority vote of qualified electors of the district in accordance with sections 15 and 56 of the act of 1919, *held* valid under sections 54–65, inclusive, and under Act Cong. Feb. 21, 1911, sec 2 (U. S. Comp. Stats. sec. 4739), and Act Cong. Aug. 13, 1914 (U. S. Comp. Stats. sec. 4713A et seq.).

5. APPEAL AND ERROR—SUPREME COURT IS NOT CONCERNED WITH QUESTION AS TO CONSTRUCTION OF PROPOSED CONTRACT, OR ITS ENFORCEABILITY WHEN QUESTIONED IN LOWER COURT AS TO VALIDITY.

The supreme court on appeal is not concerned with question as to construction of proposed contract of irrigation district with the government, or its enforceability, where question put to lower court was as to validity of contract.

6. WATER — LEGISLATURE HELD TO HAVE POWER TO PROVIDE FOR ASSESSING BENEFITS FOR CONSTRUCTION OF DRAINAGE WORKS IN IRRIGATION DISTRICT TO BE APPORTIONED TO HIGHER LANDS NOT THEN ACTUALLY REQUIRING DRAINAGE.

Legislature *held* to have power to provide under Stats. 1919, c. 64, sec. 17, for assessment of benefits for construction of drainage works to be apportioned to higher lands not then actually requiring drainage because contribution of water by their irrigation must be carried off from lower lands.

7. WATER.

Assessment for drainage of irrigation district, based on flat rate, and not on actual benefits accruing to land, is invalid.

8. WATER.

Where benefits derived by drainage are equal, the assessment may be the same.

9. WATER.

Under Stats. 1919, c. 64, sec. 54, irrigation district may be used for drainage purposes to forestall, or remedy, unfortunate conditions.

10. WATER.

Stipulation between attorneys for irrigation district and railway company, excluding right of way from district, *held* properly confirmed by lower court decree.

11. CONSTITUTIONAL LAW—APPORTIONMENT OF ASSESSMENT BENEFITS FOR DRAINAGE, REDUCED AFTER INVESTIGATION BY IRRIGATION DISTRICT DIRECTORS, HELD NOT DENIAL OF EQUAL PROTECTION OF LAW OR DEPRIVATION OF DUE PROCESS OF LAW.

Apportionment of assessment benefits for drainage purposes, reduced after investigation by directors of irrigation district, *held* not denial of equal protection of law or deprivation of due process of law.

12. WATER.

Owner of irrigable land within irrigation district must respond to assessments, where water is made available for his use, though not used.

13. WATER.
> Question of whether land is susceptible of irrigation is one of fact, involving question of benefits.

14. WATER.
> Assessment for drainage project must be based on benefits derived from it, and not on benefits derived from irrigation.

15. WATER—ASSESSMENT FOR DRAINAGE PROJECT MUST BE BASED ON BENEFITS IMMEDIATELY ACCRUING, OR WHICH WILL ACCRUE, FROM CONSTRUCTION.
> An assessment for drainage project, basing on benefits, must be based on benefits immediately accruing, or which will clearly accrue, from construction of the work.

16. APPEAL AND ERROR—SUPREME COURT WILL NOT DISTURB TRIAL COURT'S FINDINGS ON CONFLICTING EVIDENCE AS TO BENEFITS FROM DRAINAGE PROJECT ACCRUING TO LAND WITHIN IRRIGATION DISTRICT, WHERE NO PRINCIPLES WERE MISAPPLIED IN ARRIVING AT CONFIRMATION OF APPORTIONMENT OF BENEFITS.
> Trial court was exclusive judge of question of benefits from drainage project to lands within irrigation district, and supreme court will not disturb its findings on conflicting evidence, where no principles were misapplied in arriving at confirmation of apportionment of benefits.

See 40 Cyc. p. 817, n. 85 (new), 86; p. 819, n. 95 (new); p. 820, n. 11; p. 821, n. 23 (new); p. 824, n. 51, 56; (5, 16) 3 C. J. sec. 580, p. 689, n. 41; sec. 618, p. 718, n. 50; 4 C. J. sec. 2855, p. 883, n. 33.

APPEAL from the Eighth Judicial District Court, Churchill County; C. J. McFadden, Judge.

Special proceeding on petition of the Truckee-Carson Irrigation District, opposed by Annie McLean and others and the Central Pacific Railway Company. Decree was rendered, confirming the organization of the district and annexation of certain land, and confirming and approving a proposed contract of the district with the United States government to construct a drainage system, and apportionment of benefits to accrue thereunder, and adjudging said contract valid. From orders denying the respective motions for a new trial, Annie McLean and others and the Central Pacific Railway Company separately appeal. **Affirmed. Rehearing denied.**

*W. M. Kearney* and *McCarran & Mashburn,* for McLean; *Brown & Belford* and *W. M. Kennedy,* for Central Pacific Railway Co., Appellants:

This court said in Hendrich v. Walker River Irrigation District, 44 Nev. 321, that it was plan of assessment of benefits required to be carefully ascertained and fairly apportioned that commended it as wise public policy. Benefits charged are presumed to be returned in enhanced value of land.

If these are not treated as original proceedings in district court, sec. 6 of art. 6 of constitution is violated. Ormsby Co. v. Kearney, 37 Nev. 314; Knox v. Kearney, 44 Nev. 393.

Not all constitutional questions were settled in Hendrich case, supra. Courts hold opposing views of law when different phases are presented. Compare Pitt v. Scrugham, 44 Nev. 418, with Vineyard etc. Co. v. District Court, 42 Nev. 1.

Hendrich case, supra, holds affairs of district should be left to those affected, yet act excludes noncitizen and small land owners from even voice in election, and subjects them to assessments, thereby violating electoral privilege and due process clauses. It also held that district is not municipal corporation. State v. Preble, 18 Nev. 251; 5 R. C. L. 580.

Act violates local and special laws clause.

Neither United States nor other mortgagee holding lien on individual pieces of land can contract with district to take other lands in district for security. Art. 4, secs. 20 and 21.

Legislative power to specify what district board may do cannot be delegated to Congress, much less to bureaus or departments. Clark v. Mobile Port, 67 Ala. 217.

Act attempts to confer sort of appellate power on district court to ratify administrative proceedings. If this were possible appeal to supreme court would not be authorized. Scossa v. Church, 43 Nev. 403.

Lands on east side of river should not be taxed to drain lands on west side. River is natural drain. Eastern lands should be drained, if necessary, by local assessment. Stats. 1919, sec. 49.

Liability of obligations must be assumed voluntarily. Board of Directors v. Collins, 46 Nebr. 425.

Assessments are void where no benefits accrue. High lands not needing drainage should not be assessed. K. C. S. Ry. Co. v. District, 256 U. S. 658.

Mere fact that certain land is within district does not necessarily mean that it is capable of receiving benefits from irrigation or drainage. N. P. Ry. Co. v. Walla Walla Co., 200 P. 585.

Why should objectors disprove allegations of petition when petitioners have not proven them? Failure to prove facts required compels court to deny petition. Fallbrook Irrigation District v. Alila, 39 P. 793.

Public lands cannot be included or taxed if district is formed for purpose other than that recognized in congressional act. United States v. Rickey etc. Co., 164 Fed. 496.

Unless and until electors authorize bond issue for definite sum, board has no power to apportion benefits. Board's failure to examine each tract makes assessment void. Procedure is statutory and must be complied with. Hendrich case, supra. Swamp etc. v. Gwynn, 12 P. 462.

Board has no power to stipulate to exclude railroad land. Statute provides method. Medford Irrigation District v. Hill, 190 P. 857.

Obligation of contract cannot be impaired. Dartmouth College case, 4 L. Ed. 629.

If we follow Bond case, 69 L. Ed. 473, all project lands must be assessed. If we follow act, cost of drains must be apportioned according to benefits received.

Levy proportioned to quantity of land is unconstitutional. Benjamin v. Bog etc., 68 N. J. L. 197.

Extent of watershed is not proper basis. Amount of surface water for which drainage is required is. Blue v. Wentz, 43 N. E. 493.

Same principles govern in contracts between corporation and United States as between individuals. Reading etc. Co. v. United States, 69 L. Ed. 538.

*Cooke, French & Stoddard,* for Respondent:

Similar irrigation acts have been attacked from every possible point, but uniformly upheld. In Re Auxiliary etc. District, 207 P. 615; 3 Kinney on Irrigation (2d ed.), sec. 1045; Hendrich v. Walker River etc., 44 Nev. 321.

Every irrigation district state has held irrigation district to be quasi public corporation, and not municipal corporation. Cases supra; Randolph v. Stanislaus Co. 186 P. 627.

Notice of and opportunity to test correctness of levy were given. Due process clause was not violated. Fallbrook case, 41 L. Ed. 369; Gallup v. Schmidt, 46 L. Ed. 207.

Ownership, citizenship and residence requirements have been upheld in all irrigation states. Board etc. v. Collins, 64 S. W. 1087; Anderson v. District, 85 P. 316, and cases supra.

Appellants did not contend in trial court that they were alien bona fide residents of state, holding property within district and do not now. Person questioning constitutionality of act has no standing unless he belongs to class sought to be protected. 6 R. C. L. 91.

Alien owners have same privilege of being heard as citizens, hence are not deprived of property without due process. Collins and Anderson cases, supra.

Irrigation district laws are not special or local. Walker River case, supra.

If there be any unwise provision in act, legislature and not court should remedy it.

Higher lands do or may contribute water to lower lands which must be drained.

If district duties are obnoxious to county officers, remedy is with legislature, not court.

We admit burden was on plaintiffs, and district as petitioner did establish prima facie case. Appellants should have rebutted this, not sit idly by and claimed objectors were not required to make any proof in confirmation proceeding.

Commissioners erroneously included certain railroad

right of way land, and lower court properly excluded it. Stats. 1917, 256; Stats. 1919, 102.

Apportionment was not made on flat rate per acre, but varies with different tracts.

## OPINION

By the Court, SANDERS, J.:

The Truckee-Carson irrigation district was formed on a federal reclamation project, known as, and called, "Newlands Project," which was among those first selected and authorized under the act of Congress of June 17, 1902, commonly known as "the Reclamation Act," and frequently referred to as the Newlands act, because sponsored by the late United States Senator Newlands of Nevada. 32 Stat. L. 388 (U. S. Comp. Stat. sec. 4700 et seq.).

The Truckee-Carson irrigation district includes within its boundaries about 66,000 acres of irrigable land lying under the Newlands project, approximately 45,000 acres of which are now under irrigation from the government's irrigation works—the Truckee canal and the Lahontan reservoir.

This is a special proceeding brought on petition of the Truckee-Carson irrigation district, seeking the examination, approval, and confirmation of the proceedings for the organization of said district; also for the confirmation and approval of its proceedings relative to the annexation of certain lands to the district; also for the confirmation and approval of the proceedings relative to a proposed contract by the district with the government of the United States for the construction by the government of a general drainage system within the district; and also for the confirmation and approval of apportionment of benefits to accrue from the construction of said drainage works.

The immense record involves two appeals: One, the appeal of Annie McLean and others; the other, that of the Central Pacific Railway Company, a corporation. The appeals involve the same proceedings. They were

argued together and submitted for decision, with the request from the attorneys for the district for a speedy decision because of the great public importance of the case and the vast pecuniary interest dependent upon the result.  The importance of the case, both with reference to the interesting legal questions and principles involved, and the vast economic and pecuniary interest dependent upon the result, demand the most mature and deliberate consideration of this court.  The writer feels that the sensible minded will understand and appreciate that he has been unable to keep abreast with the business of the court and render an opinion within the time deemed reasonable by some of the interested parties.  Furthermore, the court is burdened with a record consisting of more than 3,000 pages of testimony, expert and non-expert, and much documentary evidence, all involving research, study, and careful investigation.  There is based upon the record a separate volume of 470 assignments of error, which refer to the record in such way as necessitated a review of practically all the evidence. There have been injected into the case the long-standing differences and animosities between the water users under the Newlands project and the United States reclamation service, which do not concern this court in the least, but which seem to have been brought into the case to emphasize the position taken by certain protestants that the assessment against their lands is illegal, unfair, and without equity.

On or before the date fixed for the hearing of the petition for confirmation at least 145 interested persons answered the petition, and by their answers sought to have their lands excluded from the district and to enjoin the district from making any apportionment of benefits or assessments of costs affecting their property for the construction of a general drainage system under a proposed contract between the district and the government of the United States.  After a full hearing upon the pleadings and evidence, the trial judge, Hon. C. J. McFadden of the Ninth district, rendered a decree, which decree confirms respectively: (1) The organization of

the Truckee-Carson irrigation district in Churchill and Lyon Counties, Nevada; (2) the annexation to said district of 12,672.6 acres of land lying under the Newlands project; (3) the confirmation and approval of a proposed contract of the district with the United States government to construct a drainage system for the district at a cost not to exceed $700,000; (4) the confirmation and approval of the apportionment of benefits to accrue to each tract or legal subdivision of irrigable land within the district from the construction of said proposed drainage system; and (5) adjudging said proposed contract to be valid and such as the board of directors of the district were authorized to enter into. The two appeals are prosecuted from orders denying the respective motions of protestants for a new trial based upon the grounds of the insufficiency of the evidence to support the decision of the court, and that the decision is against law.

We shall consider first the appeal of Annie McLean and others, and dispose of the appeal of the Central Pacific Railway Company in the concluding portion of this necessarily lengthy opinion.

The applicable state law is to be found in the Revised Laws of Nevada, 1912 (sections 4723 to 4791, inclusive). This was amended by Act 1915, c. 278, p. 434, and by Act 1917, c. 150, p. 255. In 1919 the legislature enacted a complete substitute irrigation district law in chapter 64, pp. 84 to 115. This act made many changes in the previous law, most of which, however, are of a minor character.

The Truckee-Carson irrigation district was organized in November, 1918, under the provisions of the prior law and amendments, but the district did not take steps to have its organization confirmed by court order, as required by the statute. Aside from the proceedings had for the formation of the district, all its acts and proceedings here involved were had in attempted compliance with the provisions contained in the substituted act of 1919.

The applicable federal law is to be found in the reclamation act, supra; the act of Congress of February 21, 1911, known as the "Warren Act" (36 Stat. L. 925, sec. 2 [U. S. Comp. St. sec. 4739]), and the act of Congress of August 13, 1914, known as the "Reclamation Extension Act" (38 Stat. L. 686 [U. S. Comp. St. sec. 4713A et seq.]).

To avoid prolixity, we have assembled the 470 assignments of error under the main headings: (1) The power of the state and the United States to contract for purposes of cooperation under the state and federal laws for drainage construction; (2) the legality of the assessment, and the fairness and equity in the apportionment of benefits to accrue to protestants' lands from the construction of the proposed drainage system; (3) the jurisdiction of the district court to entertain the proceeding for confirmation of the organization of said district and other matters in connection therewith.

1. Appellants in their answer assert that the court below was without jurisdiction of the subject matter, because the Nevada irrigation district act of 1919 is unconstitutional. Courts now dispose of this question with the statement that the constitutionality of irrigation district laws has been so thoroughly and universally established that the subject need not be elaborated. The several portions of the act here attacked were upheld as being constitutional. In Re Walker River Irrigation District, 195 P. 327, 44 Nev. 321. Counsel deplore that as a result of that decision Nevada stands alone in holding that an irrigation district is not a municipal corporation in a strict sense, but a public corporation for municipal purposes; thereby doing violence to our constitutional provisions relative to elections and property qualifications of voters in irrigation districts. It is probable that Idaho, and not Nevada, stands alone among the irrigation district states as to the applicability of constitutional provisions relative to elections held by irrigation districts. For counsels' information we take the liberty of citing Handbook of

Irrigation District Laws (King & Burr), p. 20. We again declare the Nevada irrigation district act of 1919 unconstitutional.

**2, 3.** It is contended that the court below exceeded its jurisdiction in adjudging the Truckee-Carson irrigation district to be a legally organized and constituted irrigation district because the proceedings for its formation were not had in compliance with the statute. We have reviewed the 30 alleged defects in the organization proceedings, and conclude with the trial court that the proceedings were in all respects in substantial compliance with the statute. Therefore, we see no necessity for incumbering this opinion with answers to extended technical arguments which in many respects misconstrue the applicable law. In one of the cases cited by counsel it is declared that, in so far as proceedings for the organization are concerned, a reasonably liberal rule of construction should be adopted to carry out the wise purpose of the law. People v. Cardiff Irr. Dist., 197 P. 387, 51 Cal. App. 307. Applying this rule to the organization under review, we are satisfied that no interested person was deprived of a single substantial right in the matter of organization, and the trial court did not exceed its jurisdiction in adjudging and finding the Truckee-Carson irrigation district to be a duly organized and constituted irrigation district.

The petitioner sought the examination, approval, and confirmation of the proposed contract between the district and the United States for the construction by the government of a drainage system for the district. The statute of 1919 provides that a proposal to enter into such a contract with the United States shall be voted upon and carried by a two-thirds majority vote of the qualified electors (sections 15 and 56). The proposed contract contains the provision that the government of the United States will not proceed with the construction of the drainage work until the contract has been approved by the voters of the district and the organization of the district confirmed as provided by the statute. An election was called pursuant to the statute by the

board of directors of the district for the 6th day of April, 1920, to vote upon this question:

"Shall the Truckee-Carson irrigation district enter into a contract with the United States of America for the construction by the United States of America of a general drainage system within the said irrigation district, at a cost of not to exceed the sum of $700,000.00 without interest; repayment of the moneys expended by the United States of America in said construction, to be made by the Truckee-Carson irrigation district in forty (40) semiannual installments, the first of which shall become due and payable on January 1st of the second calendar year following the calendar year in which the Secretary of the Interior shall announce that said expenditure has been made by the United States of America."

The contract was carried by the necessary two-thirds majority vote of the qualified electors, to wit, 244 votes in favor of the contract and 87 votes against. The main question for decision is: Is the contract valid and such as the board of directors of the district are authorized to enter into. The consideration of this question calls for a review of both the state and federal statutes.

The original act of Congress of June 17, 1902, the "Reclamation Act," seems to contemplate reclamation projects, each of which shall be complete in itself and served by irrigation works constructed for it alone, the cost to be charged against the irrigable land included in the project. No provision is made, and no authority is given, to connect with private or other nongovernmental irrigation projects, or to furnish them with water or enter into cooperative arrangements with them. Some years of experience, however, developed the possibilities of enlarged usefulness in this direction, and Congress later made provision therefor. This was done by the act of February 21, 1911, the "Warren Act." 32 Op. Attys. Gen. p. 43. This act comprises three sections, the second of which provides:

"That in carrying out the provisions of said Reclamation Act and acts amendatory thereof or supplementary

thereto, the Secretary of the Interior is authorized, upon such terms as may be agreed upon, to cooperate with irrigation districts, water users associations, corporations, entrymen or water users for the construction or use of such reservoirs, canals, or ditches as may be advantageously used by the government and irrigation districts, water users associations, corporations, entrymen or water users for impounding, delivering and carrying water for irrigation purposes.    *    *    *" U. S. Comp. St. sec. 4739.

The legal foundation and authority for the government to enter into the contract in question must be sought in this legislation.    Since the enactment of the Warren act, the policy has been pursued by the reclamation service of securing amendments to state irrigation laws providing for contractual relations between irrigation districts and the United States.    The result has been that practically all of the states that have irrigation district laws have authorized districts to cooperate with the United States, and that districts have been organized on many of the federal reclamation projects.    Such projects are to be found in Idaho, Nebraska, New Mexico, North Dakota, Oregon, Texas Utah, Washington, and Newlands (Truckee-Carson), Nevada.    The project lands organized as irrigation districts were formed largely with the motive of facilitating cooperation with the United States in drainage construction.

The provisions for cooperation with the United States are taken from the individual sections in the previous law, and are combined in consecutive sections in the Statutes of 1919, sections 54 to 65, inclusive.    Section 54 of the act provides as follows:

"In addition to the powers with which irrigation districts are or may be vested under the laws of the state, irrigation districts shall have the following powers:    To cooperate and contract with the United States under the federal reclamation act of June 17, 1902, and all acts amendatory thereof or supplementary thereto, or any

other act of Congress heretofore or hereafter enacted authorizing or permitting such cooperation, and to cooperate and contract with the State of Nevada, * * * or . for the assumption as principal or guarantor of indebtedness to the United States on account of district lands or for the collection of moneys due to the United States as fiscal agents or otherwise."

The sections following make provision for the carrying out of the enlarged powers conferred upon the board of directors of the district by section 54. The legal foundation and authority for the contract in question, in so far as the State of Nevada is concerned, must be sought in section 54. The clause of the section, "or for the assumption as principal or guarantor of indebtedness to the United States on account of district lands," is the clause under which irrigation districts formed upon federal projects have made contracts.

The Supreme Court of Idaho has held in several cases that boards of directors of irrigation districts are authorized, upon compliance with sections 2396–2401, Revised Codes, to contract with the United States for the construction, conjunctively, of a drainage system for the purpose of properly draining water-logged land within the jurisdiction of such districts, and that the secretary of the interior, under the acts of Congress above referred to, is authorized to contract with such districts for the joint construction of a proper drainage system. Nampa & Meridian Irr. Dist. v. Petrie, 153 P. 425, 28 Idaho, 227; Hillcrest Irr. Dist. v. Brose, 133 P. 663, 24 Idaho, 376; Pioneer Irr. Dist. v. Stone, 130 P. 382, 23 Idaho, 344. We note that the provisions of the Idaho Codes have practically been incorporated in the Nevada statutes.

4. We find nothing in either the state or federal statutes to prevent the making of contracts for cooperation with the United States under the reclamation and Warren acts, and our conclusion is that the proposed contract between the Truckee-Carson irrigation district and the United States is validated both by the state

and federal laws. In our preliminary examination into the law of this case we were concerned as to whether the "Warren Act" was sufficiently elastic to permit without additional legislation an irrigation district to be formed at the instance of the reclamation service on a federal project for the purpose of drainage construction, but upon further research we have found that the most prominent, relations between irrigation districts and the federal government have been with the reclamation service. Districts which have had such dealings seem to be subdivided into two classes: First, districts which have contracted with the United States, under the provisions of the Warren act, for the construction of irrigation or drainage works or both; second, districts formed at the instance of the reclamation service on reclamation projects, as substitutes for water users associations, "for the assumption as principal or guarantor of indebtedness" of project lands to the United States with or without bond. Section 54, c. 64, Statutes of Nevada 1919; U. S. Department of Agriculture, Bulletin No. 1177, date September 22, 1923.

5. We are not concerned with the question raised as to the construction of the proposed contract or its enforceability in its present form. The question put to the lower court was whether the contract was valid and such as the board of directors of the district were authorized to enter into.

The next question for determination is whether or not the apportionment for benefits and assessments can be sustained. Protestants contend that their lands are not in need of drainage, and that their irrigation does not contribute water which must be carried off or away from the lower lands; that the lands owned and held by protestants are by natural and physical conditions so located and situated as to preclude the possibility of benefits from the construction of the proposed drainage system.

Section 17 of the statute contains this declaration:

"Where drainage works are to be constructed benefits

may be apportioned to higher lands not then actually requiring drainage by reason of the fact that their irrigation contributes water which must be carried off or away from the lower lands."

6.  A similar provision is to be found in the statute of Idaho, as amended (Laws 1915, c. 42, p. 123).  The Supreme Court of Idaho has upheld the provision.  In Re Drainage District No. 1, 161 P. 321, 29 Idaho, 393; Burt et al. v. Farmers' Co-op. Irr. Co., 168 P. 1078, 30 Idaho, 752.  The language of our statute is a sufficient basis for a declaration from this court in harmony with the Idaho case, which holds:

"We have no doubt of the power of the legislature to provide that lands which by reason of artificial irrigation contribute by seepage and saturation to the swampy condition of lower lands shall contribute their just proportion of the cost of the construction of drainage works for the reclamation of such lower lands."

The legislative declaration that highlands may be assessed for drainage of lowlands shows that the law-making body considered that the principle of assessments based on benefits called for the recognition of the physical unity of the drainage area, and the partial responsibility of the owners of higher lands for the drainage difficulties.

It is practically conceded that the lands irrigated by the Truckee canal laterals are the highlands and the lands irrigated by the Lahontan reservoir are the lowlands.  Undoubtedly the proof shows that the irrigable lands in the district are in urgent need of drainage. The voters of the district have said so by their votes; the reclamation service has so declared through its drainage engineers; expert drainage engineers have so testified; and the secretary of the interior has approved as to form a contract for the expenditure of $700,000 of public moneys, subject to the appropriation by Congress, for the construction of a drainage system for the district.  In this situation it would be the height of judicial usurpation — the worst kind of usurpation —

for this court to say that the district is not in need of drainage. We have carefully considered the testimony of protestants who protest their unwillingness to have their project lands under the guise of an irrigation district organization held responsible for an indebtedness created at the instance of the reclamation service solely for the benefit of the Newlands reclamation project, and not contemplated by their original settlement under the project. These farmers are of recognized intelligence, industry, and integrity, and they gave such testimony with respect to the use of water upon their lands as makes it appear that they fully appreciate the menace of the rise of ground water, and their own counsel concede that the question of drainage is one which calls for expert testimony. Speaking generally, the problems of seepage and percolating waters, and the concomitant evil, alkali, are among the most difficult in engineering and local operations, as well as in law, on account of the lack of exact knowledge of the causes and effects which influence the course of water beneath the surface of the ground. Handbook of Irrigation District Laws, p. 32. The evidence does not show that protestants' lands are now actually in need of drainage, but, in view of seepage, alkali, the rapid rise of ground water, and the urgent necessity of drainage for the district, it may be that the time is not far distant when they will be in need of drainage. Where large areas are being irrigated, and where the ground water must travel for a considerable distance through sand, clay, silt, gravel, or mixtures of these, before finding any natural outlet, a general rise in the water plane must occur. Field investigations and studies of the rise of ground water in the case at bar lead to the conclusion that the need for drainage is due to the subsoil formation of more or less impervious material on which irrigation water accumulates or which hinders the movement of underground waters. Report of Bernard A. Etcheverry, drainage engineer, a witness in this case. The rapid rise of ground water is shown in the crop reports made

to the reclamation service.  In the year 1917 there were 2,166 acres under the Newlands project rendered unfit for cultivation by seepage; in 1918, 2,248 acres; in 1919, 2,847 acres; in 1920, 3,411 acres.  Mr. Etcheverry testified that in 1919 the seepage from the main Truckee canal and laterals and from the north and south Carson river divisions totaled 175,992 acre feet, which, expressed otherwise, in cubic contents, signifies 175,000 acres of land covered with water one foot deep. This estimate does not include 26,950 acre feet of seepage from the Lahontan reservoir in the year 1919 or the seepage incident to 134,000 acre feet of water applied to the irrigation of 44,324 acres of land in 1919.  The testimony of the expert witnesses, taken in connection with the reports of drainage examinations, shows that the irrigation of protestants' land does contribute water which must be carried off or away from the lower land of the district.  The actual condition of the other lands of the district refutes the theory of counsel for protestants that the natural and physical condition of protestants' lands precludes the possibility of benefits from the construction of the drainage system.

7, 8.  It is contended that the assessment for drainage in this case is a flat rate of $10.15 per acre on all irrigable lands in the district contrary to the sections of the statute governing the apportionment of benefits and assessments which provide that the assessment must be made in accordance with the benefits which will accrue to each of the tracts or subdivisions of land from the construction of the drainage system.  We agree with counsel that an assessment for drainage, based on a flat rate, and not upon actual benefits accruing to the land, is invalid.  Nampa & Meridian Irr. Dist. v. Petrie, 223 P. 531, 38 Idaho, 529.  But on rehearing in that case the court states:

"So, also, if the benefits derived by different tracts from the construction of irrigation or drainage works are equal, the assessment may be the same."

We are of opinion that the board of directors of the

district in apportioning the benefits considered that the benefits derived by the irrigable lands from the construction of the drainage system were equal.

9. It is contended that the Truckee-Carson irrigation district was organized as an irrigation district; therefore this court has no authority to make a drainage district out of an irrigation district. Our answer to this contention is found in the section of the statute which provides that drainage works may be covered by contract with the United States upon such projects as are assisted or undertaken by the federal government. Section 54 of the statute is equivalent to a legislative determination that an irrigation district should and may be used for drainage purposes to forestall or remedy unfortunate conditions; in other words, to protect the irrigation project from suicide or natural death.

10. It is contended that the court erred in confirming by its decree a stipulation entered into at bar between the attorneys for the irrigation district and the Central Pacific Railway Company excluding the company's right of way lands from the district. We do not think the court exceeded its jurisdiction, power, or authority in confirming the stipulation.

This brings us to the consideration of the separate appeal of the Central Pacific Railway Company. Pending the organization proceedings before the board of county commissioners of Churchill County the Central Pacific Railway Company petitioned to have included in the district 1,587 acres of its contiguous land. As other lands in the district, the soil and topographic conditions have been and are limiting factors in the improvement of these lands. They are low-lying lands, containing a high percentage of alkali, and, like other areas in the district, are sandy, porous, of varying composition, rough, and easily wind blown. The roughness and irregularity make leveling for irrigation expensive and the lands hard to subdue. A statute designed to assist the irrigation farmers under the Newlands project in leveling their lands was once before this court for

review.    State v. Churchill County, 185 P. 459, 43 Nev. 290.

11. In this instance the board of directors of the district levied an assessment of from $10.15 per acre down to $4.91 per acre against the lands in question to pay the cost of the proposed drainage system. The company protested the assessment and the board appointed a committee to make an investigation of the lands, and subsequently, by resolution, reduced the prior apportionment of benefits to $4.29 per acre. The company now contends that the entire acreage, except 126 acres, is not susceptible of irrigation, because of the high alkali content and exceeding roughness, and that the lands cannot with profit be subdued, and any assessment of benefits to accrue from the construction of a drainage system cannot possibly result in benefit to the lands. Furthermore, it is contended that the board of directors applied a different rule of assessment to the company's lands from that applied to other lands, and that the assessment is arbitrary and discriminatory, and, also, that the lands are without a water right. We do not understand upon what theory it can be successfully asserted that the apportionment of benefits denies the company the equal protection of the laws or deprives it of due process of law.

12-16. Counsel insist that the proof shows that the lands, with the exception of 126 acres thereof, are not susceptible of irrigation, and in support of this contention rely upon the testimony of the company's engineer and the testimony of one of the protestants in this case. We concede that, if we were dealing with a question of the cost and maintenance of an irrigation system, and the company's lands were charged with an assessment for its maintenance and protection, when in fact the land was not, and could not be, benefited by irrigation, we should decide that a legal fraud would result from the assessment. Northern Pacific Railway Company v. Walla Walla County, 116 Wash. 684, 200 P. 586. But, on the other hand, the owner of irrigable land within

an irrigation district must respond to assessments where water is made available for his use, though the water is not used. Otis Orchards Co. v. Otis Orchards Irr. Dist. No. 1 et al., 215 P. 23, 124 Wash, 510. It is conceded or must be conceded, that the question of whether land is susceptible of irrigation or not is one of fact, and likewise is a question of benefits. We might dispose of counsels' argument by saying that the evidence bearing upon the question of the irrigability of the land in question was submitted to the trial court upon evidence in which there is a substantial conflict, and that under the rule we are in no position to disturb the assessment. But, as pointed out in the opinion on rehearing in Nampa & Meridian Irr. Dist. v. Petrie, 223 P. 531, 38 Idaho, 529, where the assessment is for the drainage project, it must be based on benefits derived from it, and not on benefits derived from irrigation. Therefore, whether the land in question was susceptible of irrigation or not is not controlling. We are not called upon in this case to determine just what may be considered in determining whether or not land benefits from the consideration of a drainage project. The rule is that an assessment for a drainage project based upon benefits must, like an assessment for any other public improvement, be based upon benefits, immediately accruing, or which will clearly accrue, from the construction of the work. As a general rule, the benefit contemplated by the statute does result in an increase in the value of the land. There may be some cases where there is an actual benefit, though it is not possible to prove an actual increase in value. It is sufficient if an actual benefit accrues. Nampa & Meridian Irr. Dist. v. Petrie, supra, on rehearing. As to the question of benefits the trial court was the exclusive judge, and, not having misapplied any principle in arriving at the confirmation of the apportionment of benefits to accrue to the company's land from the construction of the drainage system, upon conflicting evidence we are not in position to disturb the court's findings and grant the company a new trial.

The respective orders denying protestants' motions for a new trial are affirmed.

## ON PETITION FOR REHEARING

July 30, 1926.

*Per Curiam:*

Rehearing denied.