LOZIER, D. B. A. CADALLIC CUSTOM CAMPERS, APPELLANT AND
CROSS APPELLEE, v. KLINE ET AL., APPELLEES AND
CROSS APPELLANT.

[Cite as Lozier v. Kline (1973), 40 Ohio App. 2d 277.]

(No. 1320—Decided December 12, 1973.)

*Mr. Mack D. Cook, II,* and *Mr. William H. H. Wertz,*
for appellant.
*Mr. Charles A. Kennedy,* for appellees.

VICTOR, J. This appeal is from an order of the Court
of Common Pleas of Wayne County wherein that court
denied plaintiff, the appellant and cross-appellee, a perma-
nent injunction, and other relief.

Plaintiff, A. L. Lozier, who does business as Cadallic
Custom Campers, filed suit against Norman Kline and David
L. Kline, the appellees and cross-appellants. In his com-
plaint he alleges, in substance, that:

"(1) Since August of 1969, he has manufactured and
sold caps and covers for the rear bed or platform of ve-
hicles such as pickup trucks;

"(2) Those products are of 'unique construction, shape,
design, nonfunctional trim and color, so as to present a
physical appearance to the ordinary purchaser essential
to commercial success,' and that the physical appearance
acquired a secondary meaning, that Lozier is the manu-
facturer of the product;

"(3) Norman Kline obtained one of Lozier's caps or covers, known as the 'Trimline Series,' for use as a model and he and David L. Kline have manufactured, and offered for sale within Ohio, an article which is a copy of Lozier's product;

"(4) Said acts constitute an appropriation of the product designed by Lozier and are an act of unfair competition, thereby unlawfully appropriating Lozier's property rights;

"(5) Said acts constitute a deceptive trade practice, within the purview of R. C. 4165.02, by [the defendants]

"(a) passing off their cap and cover products as those of plaintiff; or

"(b) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of cap and cover products; or

"(c) representing that their cap and cover products are of a particular standard, quality or grade which has gained public acceptance because of the plaintiff [Lozier]."

Plaintiff demanded judgment against the defendants:

"1. That they be restrained during the pendency of this action, and permanently, whether through agents, servants, employees, or representatives, or through persons acting in privity or concert from:

"(a) Manufacturing, selling, advertising, or distributing any cap or cover product having the physical appearance of plaintiff's products;

"(b) using any cap or cover product manufactured by plaintiff as a pattern or model for designing and manufacturing such products;

"(c) using the name 'Cadallic Custom Campers' in connection with the promotion or sale of any cap and cover product which they manufacture;

"(d) engaging in any acts, or making any representations which have the effect of leading the public to believe that cap and cover products manufactured and sold by defendants are connected with or related to products manufactured or sold by plaintiff, or to 'Cadallic Custom Campers.'"

Plaintiff further asked for damages, an accounting, and other equitable relief.

The Klines denied all material allegations and further answered that Lozier's suit was groundless, that he knew it to be such and, pursuant to R. C. 4165.03, prayed for attorney fees.

The trial judge made the following findings of fact and conclusions of law.

"Findings of Fact.

"1. Plaintiff, A. L. Lozier, is doing business as Cadallic Custom Campers at West Salem, Wayne County, Ohio, and, since 1969, has been manufacturing and selling caps and covers, including one designated as 'Trimline Series,' for installation on the rear beds of pickup trucks.

"2. The 'Trimline Series' cap and cover, as it presently appears, was developed in the time period March, 1969, through August, 1969, by Lozier and a Mr. Baker.

"3. The plaintiff has not applied for a patent with respect to his cap and cover product and holds no registered trade marks or copyrights with respect thereto.

"4. Defendant, David Kline, in April, 1971, purchased from plaintiff a 'Trimline Series' cap and cover.

"5. Defendant, Norman Kline, in October, 1971, commenced manufacturing caps and covers for the rear bed or platform of motor vehicles such as pickup trucks and such product in general appearance looked like the 'Trimline Series' product of the plaintiff.

"6. In November, 1971, Norman Kline placed on consignment with Village Motors, Inc., Millersburg, Ohio, two caps and covers for purpose of sale to consumers, and he told Richard Steimel, president of the Village Motors, Inc., that he, Norman Kline, had manufactured the caps and covers.

"7. The agents of Village Motors, Inc., represented to the public that the caps and covers were the product of Norman Kline.

"8. Plaintiff saw the caps and covers manufactured by Norman Kline at the business location of Village Motors, Inc., and represented himself to be a potential purchaser

and was advised by agents of Village Motors, Inc., that the product was manufactured by Norman Kline.

"9. The materials and supplies that are used by both plaintiff and defendant, Norman Kline, in the manufacturing of their products can be purchased on the open market by anyone, and some of the materials are purchased by both parties from the same suppliers.

"10. Defendant, Norman Kline, used no identifying trade name or mark on his product.

"11. Plaintiff always used the trade name 'Cadallic Custom Camper' plainly visible on his product."

"Conclusions of Law.

"1. Plaintiff's evidence fails to show that, within the meaning and purview of O. R. C. 4165.02(A), the defendant, Norman Kline, passed off or attempted to pass off his products as those of the plaintiff nor that he deceived or attempted to deceive the public by 'palming off.'

"2. Plaintiff's evidence fails to show that, within the meaning and purview of O. R. C. 4165.02 (C), the placing on consignment of cap and cover products manufactured by defendant, Norman Kline, has caused a likelihood of confusion, or misunderstanding as to affiliation, connection or association with plaintiff and Cadallic Custom Campers.

"3. The defendant, David Kline, committed no acts having a wrongful purpose within the meaning and purview of R. C. 4165.01, et seq.

"4. The plaintiff is not entitled to injunctive relief against the defendants or either of them."

"The preliminary injunction issued by the Court against the defendants on December 6, 1971, is vacated and discharged.

"Further a permanent injunction against the defendants is denied, and the further relief requested by plaintiff against the defendant is denied.

"5. This action was brought by plaintiff under O. R. C. Chapter 4165, an untried law effective September 25, 1969. The evidence fails to show that the plaintiff knew his action to be groundless, and for this reason the defendants are not entitled to an award for attorney fees or other expenses."

Lozier disputes only finding of fact No. 7, and conclusions of law 1, 2 and 4.

Insisting that he is entitled to judgment, Lozier says that the trial court erred in the following respects:

"1. The trial court erred in finding that the plaintiff's evidence failed to show that, within the meaning and purview of R. C. 4165.02(A), the defendant, Norman Kline, had passed off or attempted to pass off his products as those of the plaintiff, and that he deceived or attempted to deceive the public by 'palming off.'

"2. The trial court erred in finding that the plaintiff's evidence failed to show that, within the meaning and purview of R. C. 4165.02(C), the placing on consignment of cap and cover products manufactured by defendant, Norman Kline, has caused a likelihood of confusion, or misunderstanding as to affiliation, connection or association with plaintiff, Cadallic Custom Campers.

"3. The trial court erred in concluding that the plaintiff is not entitled to injunctive relief against the defendant, Norman Kline.

"4. The trial court erred in vacating and discharging the preliminary injunction issued by the court against the defendant, Norman Kline, on December 6, 1971.

"5. The judgment of the trial court is contrary to law and is not sustained by the weight of the evidence."

The defendants, Norman L. Kline and David L. Kline, filed a cross-appeal asserting that the trial court erred: "in finding that the defendants were not entitled to an award for attorney fees, or other expenses, under the provisions of Section 4165.03."

Since Lozier disputes only finding of fact number 7, the judgment is affirmed in its entirety as to David Kline.

R. C. 4165.02 provides *inter alia* that: "A person engages in a deceptive trade practice when, in the course of his business * * * he:

"(A) Passes off goods or services as those of another;
"(B) * * *
"(C) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another. * * *"

There is no evidence in this record that Norman Kline "passed off" his caps and covers as Lozier's products. Actually, the only evidence on the issue is to the contrary. When Lozier learned that articles similar in appearance to his own were on display at Steimel's Village Motors, Inc., in Millersburg, he went there and, posing as a potential customer (a member of the public), he examined them and made an inquiry as to the name of the manufacturer. He was told that the two articles on display were manufactured by Norman Kline. We can only conclude that the trial court's finding of fact No. 7 was justified, and that Norman Kline has not passed off his products to the public as those of Lozier.

Undoubtedly, the products of Norman Kline and Lozier are alike in general appearance. Actually, Klines' product is practically an exact copy of Lozier's Trimline Series. However, there is no evidence in this record that any prospective purchaser, or anyone else for that matter, has ever been misled, deceived or confused, after examining a Kline product, into believing that it was in any way affiliated, connected, or associated with a Lozier product. Of course, there has never been any sales of a Kline product so there could be no evidence that a purchaser had bought a Kline article thinking it was a Lozier creation. Hence, the plaintiff, Lozier, has failed to sustain the burden of proof in this regard, and the conclusions of the trial judge must be sustained.

Nevertheless, is the plaintiff without any relief? Since the decisions of *Sears, Roebuck & Co.* v. *Stiffel Co.*, 376 U. S. 225, 11 L. Ed. 2d 661; and *Compco Corp.* v. *Day-Brite Lighting, Inc.*, 376 U. S. 234, 11 L. Ed. 2d 669, it is clear that an unpatentable article is in the public domain, and that the public policy, which encourages free competition, permits the design of the unpatented article to be copied, and the copied article sold, even though the copy is identical to the original.

The court in *Sears, supra*, at 232, 11 L. Ed. 2d at 667, recognized that, while there could be confusion, "* * * [the] mere inability of the public to tell two identical articles apart is not enough to support an injunction against copy-

ing * * *." And this is so even though the original appearance has acquired a secondary meaning by which the design is associated with the original manufacturer. *Compco, supra*. Nevertheless, *Sears*, at 232, 11 L. Ed. 2d at 667, recognized that "* * * a state may in appropriate circumstances require that goods, whether patented or unpatented, be labeled or that other precautionary steps be taken to prevent customers from being misled as to source * * *." *Compco* further states, at 238, 11 L. Ed. at 672:

"* * * while the federal patent laws prevent a state from prohibiting the copying and selling of unpatented articles, they do not stand in the way of state law, statutory or decisional, which requires those who make and sell copies to take precautions to identify their products as their own."

In the light of those decisions it is apparent that, while copying may not be prohibited, and a copier may reproduce articles and sell them on the open market, state law may prohibit the copies from being passed off as the plaintiff's goods, and where confusion is likely to result among purchasers, because of the identical appearance of the copy with the original, "as to which article is which or who is the maker," a state may require that those who make and sell copies take whatever precautions are necessary to identify their products as their own so as to exclude the notion that they are the plaintiff's goods.

Consequently, the plaintiff, Lozier, is not entitled to an injunction prohibiting Norman Kline from manufacturing, selling, advertising or distributing any cap or cover having the physical appearance of Lozier's product. He cannot be enjoined from using a Lozier product as a pattern or mold for designing and manufacturing copies. Furthermore, he may not be enjoined from using the name "Cadallic Custom Campers," in connection with the advertising or promotion for sale of a copy, provided such advertisement and promotion does not contain any representation, or create any reasonable likelihood that the advertised product is affiliated with or sponsored by Lozier; and further, that it expressly excludes the notion that the advertised product is Lozier's product. *Smith* v. *Chanel, Inc.* (C. A. 9), 402 F. 2d 562; *Viavi Co.* v. *Vimedia Co.* (C. A. 8),

245 F. 289. See, also, *Societe Comptoir, etc.,* v. *Alexander's Dept. Stores, Inc.* (C. A. 2), 299 F. 2d 33; 1 A. L. R. 3d 752; Justice Holmes in *Saxlehner* v. *Wagner,* 216 U. S. 375.

At the time this action was filed, Norman Kline had manufactured only the two articles later placed on consignment with Steimel. Subsequent to the lifting of the temporary injunction, others have been manufactured. It is, of course, Norman Klines' intention to manufacture these articles in the future and place them on the open market for sale. For those articles manufactured in the future, which will be identical in appearance with the "Trimline Series," we conclude that fair competition requires that in order to avoid any likelihood of confusion, they be labeled in some way to show that they are the goods of Kline and not those of Lozier. For this reason, the case is remanded to the trial court to issue such an order in accordance with this opinion. In all other respects the judgment of the trial court, relative to Lozier's appeal, is affirmed.

Furthermore, we find no merit to appellees' cross-appeal.

R. C. 4165.03 provides, in pertinent part, that:

"The court may award reasonable attorneys' fees to the prevailing party. Costs for attorneys' fees may be assessed against a plaintiff if the court finds he knew the action to be groundless. * * *"

The allowance of attorneys' fees is discretionary with the court, not mandatory. Furthermore, the action was brought under an "untried act," and upon the advice of counsel. Finally, we find that the suit was not "groundless."

Upon consideration whereof, the judgment of the Court of Common Pleas is modified, and, as modified, it is affirmed, with the matter remanded to the trial court to effectuate the modification.

*Judgment modified and affirmed.*

BRENNEMAN, P. J., and MAHONEY, J., concur.