662 P.2d 452

The KAIBAB SHOP, an Arizona corporation, Plaintiff/Appellee,

v.

DESERT SON, INCORPORATED, an Arizona corporation; Jesus C. Aguilar and Jane Doe Aguilar, husband and wife; Marcel Fitzer and Jane Doe Fitzer, husband and wife; and Gregory Cookson and Jane Doe Cookson, husband and wife, Defendants/Appellants.

No. 2 CA–CIV 4332.

Court of Appeals of Arizona, Division 2.

Nov. 26, 1982.

Rehearing Denied Feb. 4, 1983.

Monroe, Wilson & Collins By Michael J. Monroe, Tucson, for plaintiff/appellee.

William J. Risner, Tucson, for defendants/appellants.

## OPINION

BIRDSALL, Judge.

This appeal is from the judgment of the trial court, sitting with an advisory jury, enjoining the defendants-appellants from making and selling certain "Indian" boots (moccasins) and awarding damages to the plaintiff-appellee for "loss of profits."

The appellee, The Kaibab Shop, makes and sells, at both wholesale and retail, southwest-oriented items including Indian style boots. It had engaged in this business

488

for many years prior to 1975 when the appellant Desert Son, Inc. first began making and selling similar "Indian" boots. The appellant produced and sold two styles of boot which were identical, for all practical purposes, to the appellee's Navajo and Ute boots. Desert Son called these the Pueblo and High Top boots. The individual appellants are the owner-employees of Desert Son. The appellee's boots were not patented.

The trial was bifurcated with the liability issue tried first to the court and advisory jury. This was an equitable action because of the injunctive relief which was sought. Trial of the damages issue to the court alone followed almost three years later. The advisory jury answered 16 interrogatories. The trial court made findings of fact, Rule 52(a), Rules of Civil Procedure, 16 A.R.S., which were consistent with some of the jury's answers. However, some of the jury's answers were not incorporated in the trial court's findings.

The trial court made the following findings:

"... the plaintiff's Kaibab Shop Boots have acquired a special significance whereby the buying public identifies them as products of the Kaibab Shop; the Desert Son, Inc. 'Pueblo Boot' and 'High Top Boot' are such copies as is likely to cause prospective customers to mistake the Desert Son Boots as being the 'Navajo Boot' and the 'Ute Boot' of the Kaibab Shop; that the copied features are functional and that Desert Son, Inc. has not taken reasonable steps to identify its moccasins as being a Desert Son product."

Presumably based on these findings, the court enjoined the appellants from "further manufacturing the 'Pueblo' and 'Ute' boots unless reasonable steps are first taken to identify these products as being those of Desert Son Corporation" and ordered that a trial date be set on the issue of damages. The court made no conclusions of law other

than ordering this relief. The court did not either specifically or implicitly reject the jury findings which were not incorporated in its own findings. *See Wooldridge Const. Co. v. First Nat. Bank,* 130 Ariz. 86, 634 P.2d 13 (App.1981). Rule 39(*l*), Rules of Civil Procedure, 16 A.R.S.

One of the jury findings not used as a finding by the trial court was that Desert Son, Inc. did nothing through their merchandising to mislead or confuse purchasers as to the identity of the manufacturer of Desert Son moccasins. The significance of this finding will become apparent as we discuss the law on the issue which we find controlling in this appeal. This finding is not only supported by the evidence, there is no contradictory evidence.

■ The resolution of this appeal turns on the first issue raised by the appellants. Appellants rely on two 1964 decisions of the United States Supreme Court for their position that damages may not be awarded to one vendor from a competitor who sells a virtually identical article based upon the existence of confusion among potential customers. *Sears, Roebuck & Co. v. Stiffel Company,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) and *Compco Corp. v. Day-Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). The appellee agrees that these two decisions so hold but argues that the instant case involved the "palming off" by the appellants of their products as the appellee's. *Compco* recognizes this exception to the rule:

"... A state of course has power to impose liability upon those who, knowing that the public is relying upon an original manufacturer's reputation for quality and integrity, deceive the public by palming off their copies as the original ...." *Compco, supra,* at 238, 84 S.Ct. at 782, 11 L.Ed.2d at 672.

The appellee's reliance on this exception is not well-founded since there is no evidence to support a "palming off"[1] by the appel-

1. "Palming off" is an attempt to make the purchaser believe that the product of the subsequent entrant is that of his better known competitor. *See Enders Razor Co. v. Christy Co.,* 85 F.2d 195 (6th Cir.1936); *Bristol-Myers Company v. R.H. Macy & Co.,* 151 F.Supp. 513

lants. This is undoubtedly the reason for the jury's finding that the appellants did nothing to mislead or confuse purchasers as to the identity of the manufacturer of their merchandise.

■ The *Sears* and *Compco* cases clearly hold that federal patent laws prevent a state from prohibiting the copying and selling of unpatented articles and the fact that confusion may exist concerning the maker of an article does not provide grounds for an exception to this rule. In *Sears* the Stiffel Co. contended, in part, that Sears had caused confusion as to the source of the "pole lamp" which they designed and manufactured by copying the product. It argued that this constituted unfair competition under Illinois law. Both the District Court and the Court of Appeals based their holdings in favor of Stiffel on the grounds that there was a likelihood of confusion, and some actual confusion as to the source of the lamps because of the "remarkable sameness of appearance" in the two lamps. After reviewing the development and significance of patent law and the relationship between federal and state law in that area, the Supreme Court said:

"Just as a State cannot encroach upon the federal patent laws directly, it cannot, under some other law, such as that forbidding unfair competition, give protection of a kind that clashes with the objectives of the federal patent laws." *Sears, supra,* at 231, 84 S.Ct. at 789, 11 L.Ed.2d at 667.

And it held:

"... mere inability of the public to tell two identical articles apart is not enough to support an injunction against copying or an award of damages for copying that which the federal patent laws permit to be copied." *Sears, supra,* at 232, 84 S.Ct. at 789, 11 L.Ed.2d at 667.

In *Compco* we find the following:

"That an article copied from an unpatented article could be made in some other

way, that the design is 'nonfunctional' and not essential to the use of either article, that the configuration of the article copied may have a 'secondary meaning' which identifies the maker to the trade, or that there may be 'confusion' among purchasers as to which article is which or as to who is the maker, may be relevant evidence in applying a State's law requiring such precautions as labeling; however, and regardless of the copier's motives, neither these facts nor any others can furnish a basis for imposing liability for or prohibiting the actual acts of copying and selling. Cf. *Kellogg Co. v. National Biscuit Co.* 305 US 111, 120, 83 L ed 73, 79, 59 S Ct 109 [114] (1938). And of course a State cannot hold a copier accountable in damages for failure to label or otherwise to identify his goods unless his failure is in violation of valid state statutory or decisional law requiring the copier to label or take other precautions to prevent confusion of customers as to the source of the goods.

Since the judgment below forbids the sale of a copy of an unpatented article and orders an accounting for damages for such copying, it cannot stand." *Compco, supra,* at 238–39, 84 S.Ct. at 782, 11 L.Ed.2d at 672–73.

Arizona is obliged to apply *Sears* and *Compco.* The trial court failed to do so. Its decision awarding damages is clearly erroneous. The judgment is based on the very elements present in *Sears* and *Compco:* the special significance of the product by which the public identifies it as Kaibab moccasins, the identical copy, the mistake which customers are likely to make, and that no steps have been taken to identify the source of the product.

■ There is one other issue which we must address. The trial court's injunction only prohibited the marketing of the appellants' boots "unless and until reasonable

---

(S.D.N.Y.1957). The line between palming off and creating confusion as to source is indistinct; in effect, palming off is simply a direct and more flagrant means of misleading purchasers as to the source of the product. Both

palming off and creating confusion as to source can easily lap over into misappropriation of the property or goodwill of a competitor." *Pezon Et Michel v. Ernest R. Hewin Associates, Inc.,* 270 F.Supp. 423 (S.D.N.Y.1967).

490

marking precautions are first taken which meet with the approval of this Court to identify and distinguish the Desert Son Pueblo-style and High Top boots from the Navajo-style and Ute-style boots manufactured at the Kaibab Shop." Such a labeling requirement is not prohibited by either *Sears* or *Compco.* Addressing this issue the *Sears* court said:

> "Doubtless a State may, in appropriate circumstances, require that goods, whether patented or unpatented, be labeled or that other precautionary steps be taken to prevent customers from being misled as to the source, just as it may protect businesses in the use of their trademarks, labels, or distinctive dress in the packaging of goods so as to prevent others, by imitating such markings, from misleading purchasers as to the source of the goods." *Sears, supra,* at 232, 84 S.Ct. at 789, 11 L.Ed.2d at 667.

We have not been referred to any Arizona decision or statute which purports to either permit or prohibit a requirement that identical goods be labeled. No Arizona law imposes liability on sellers who do not label their products. Nevertheless, we believe the trial judge could properly fashion such a remedy to protect the established business of the appellee. *See Taylor v. Quebedeaux,* 126 Ariz. 515, 617 P.2d 23 (1980). No less authority than Chief Justice Holmes of the U.S. Supreme Court supports this proposition. Speaking for the Massachusetts Supreme Court in *Flagg Mfg. Co. v. Holway,* 178 Mass. 83, 59 N.E. 667 (1901), he said:

> ". . . In the absence of a patent the freedom of manufacture cannot be cut down under the name of preventing unfair competition . . . . All that can be asked is that precautions shall be taken, so far as are consistent with the defendant's fundamental right to make and sell what it chooses, to prevent the deception which no doubt it desires to practice. . . . the plaintiff's right can be protected sufficiently by requiring the defendant's sithers (zithers) to be clearly marked so as to indicate unmistakenly that they are the defendant's and not the plaintiff's goods. This is the relief which the master found

to be proper, and we are of opinion that he was right. To go further is to save the plaintiff from a competition from which it has no right to be exempt." *See also Lozier v. Kline,* 40 Ohio App.2d 277, 319 N.E.2d 204 (1973) and *Rader v. Derby,* 120 Ind.App. 202, 89 N.E.2d 724 (Ind.1950). We hold that where the product has acquired a special significance whereby the public identifies it as the original maker's and confusion has resulted causing damage to the business of the original maker the court may impose a reasonable labeling requirement on the copier.

The trial court awarded $20,800 attorney fees to the appellee. No authority supports such an award. This was not an action arising out of contract. A.R.S. § 12–341.01, *Bouldin v. Turek,* 125 Ariz. 77, 607 P.2d 954 (1979).

We set aside the judgment for damages and attorney fees. We affirm as to the injunctive relief.

Reversed in part; affirmed in part.

HOWARD, C.J., and HATHAWAY, J., concur.