## COMPCO CORPORATION *v.* DAY-BRITE LIGHTING, INC.

No. 106.  Argued January 16, 1964.—Decided March 9, 1964.

*Jerome F. Fallon* argued the cause for petitioner.  With him on the briefs were *Horace Dawson* and *John H. O. Clarke.*

*Owen J. Ooms* argued the cause for respondent.  With him on the brief was *Roy A. Lieder.*

*Solicitor General Cox, Assistant Attorney General Orrick, Daniel M. Friedman* and *Lionel Kestenbaum* filed a brief for the United States, as *amicus curiae,* urging reversal.

MR. JUSTICE BLACK delivered the opinion of the Court.

As in *Sears, Roebuck & Co.* v. *Stiffel Co., ante,* p. 225, the question here is whether the use of a state unfair competition law to give relief against the copying of an unpatented industrial design conflicts with the federal patent laws.  Both Compco and Day-Brite are manufacturers of fluorescent lighting fixtures of a kind widely used in offices and stores.  Day-Brite in 1955 secured from the Patent Office a design patent on a reflector having cross-ribs claimed to give both strength and attractiveness to the fixture.  Day-Brite also sought, but was refused, a mechanical patent on the same device.  After Day-Brite

had begun selling its fixture, Compco's predecessor [1] began making and selling fixtures very similar to Day-Brite's. This action was then brought by Day-Brite. One count alleged that Compco had infringed Day-Brite's design patent; a second count charged that the public and the trade had come to associate this particular design with Day-Brite, that Compco had copied Day-Brite's distinctive design so as to confuse and deceive purchasers into thinking Compco's fixtures were actually Day-Brite's, and that by doing this Compco had unfairly competed with Day-Brite. The complaint prayed for both an accounting and an injunction.

The District Court held the design patent invalid; but as to the second count, while the court did not find that Compco had engaged in any deceptive or fraudulent practices, it did hold that Compco had been guilty of unfair competition under Illinois law. The court found that the overall appearance of Compco's fixture was "the same, to the eye of the ordinary observer, as the overall appearance" of Day-Brite's reflector, which embodied the design of the invalidated patent; that the appearance of Day-Brite's design had "the capacity to identify [Day-Brite] in the trade and does in fact so identify [it] to the trade"; that the concurrent sale of the two products was "likely to cause confusion in the trade"; and that "[a]ctual confusion has occurred." On these findings the court adjudged Compco guilty of unfair competition in the sale of its fixtures, ordered Compco to

---

[1] The sales of which Day-Brite complained in this action had actually been made by the Mitchell Lighting Company. However, by the time the complaint was filed, Mitchell had been acquired by Compco, which was therefore the defendant in the action and is the petitioner here. For simplicity we shall throughout the opinion refer only to Compco even though the transactions for which Compco was sought to be held liable were those of the predecessor company, Mitchell.

account to Day-Brite for damages, and enjoined Compco "from unfairly competing with plaintiff by the sale or attempted sale of reflectors identical to, or confusingly similar to" those made by Day-Brite. The Court of Appeals held there was substantial evidence in the record to support the District Court's finding of likely confusion and that this finding was sufficient to support a holding of unfair competition under Illinois law.[2]   311 F. 2d 26. Although the District Court had not made such a finding, the appellate court observed that "several choices of ribbing were apparently available to meet the functional needs of the product," yet Compco "chose precisely the same design used by the plaintiff and followed it so closely as to make confusion likely."   311 F. 2d, at 30. A design which identifies its maker to the trade, the Court of Appeals held, is a "protectable" right under Illinois law, even though the design is unpatentable.[3]   We granted certiorari.   374 U. S. 825.

To support its findings of likelihood of confusion and actual confusion, the trial court was able to refer to only one circumstance in the record.   A plant manager who had installed some of Compco's fixtures later asked Day-Brite to service the fixtures, thinking they had been made by Day-Brite.   There was no testimony given by a purchaser or by anyone else that any customer had ever been misled, deceived, or "confused," that is, that anyone had ever bought a Compco fixture thinking it was a Day-Brite fixture.   All the record shows, as to the one instance cited by the trial court, is that both Compco and Day-Brite fixtures had been installed in the same plant, that three years later some repairs were needed, and that

[2] The Court of Appeals also affirmed the holding that the design patent was invalid.   No review of this ruling is sought here.

[3] As stated in *Sears, Roebuck & Co.* v. *Stiffel Co., ante,* at p. 228, n. 2, we do not here decide whether the Court of Appeals was correct in its statement of Illinois law.

the manager viewing the Compco fixtures—hung at least 15 feet above the floor and arranged end to end in a continuous line so that identifying marks were hidden—thought they were Day-Brite fixtures and asked Day-Brite to service them.[4]  Not only is this incident suggestive only of confusion *after* a purchase had been made, but also there is considerable evidence of the care taken by Compco to prevent customer confusion, including clearly labeling both the fixtures and the containers in which they were shipped and not selling through manufacturers' representatives who handled competing lines.

Notwithstanding the thinness of the evidence to support findings of likely and actual confusion among purchasers, we do not find it necessary in this case to determine whether there is "clear error" in these findings. They, like those in *Sears, Roebuck & Co.* v. *Stiffel Co., supra,* were based wholly on the fact that selling an article which is an exact copy of another unpatented article is likely to produce and did in this case produce confusion as to the source of the article.  Even accepting the findings, we hold that the order for an accounting for damages and the injunction are in conflict with the federal patent laws.  Today we have held in *Sears, Roebuck & Co.* v. *Stiffel Co., supra,* that when an article is unprotected by a patent or a copyright, state law may not forbid others to copy that article.  To forbid copying would interfere with the federal policy, found in Art. I, § 8, cl. 8, of the Constitution and in the implementing federal statutes, of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain. Here Day-Brite's fixture has been held not to be entitled to a design or mechanical patent.  Under the federal pat-

---

[4] The only testimony about this incident was given by a sales representative of Day-Brite, who said that the plant manager had climbed up on a forklift truck to look at the fixtures.  The manager was not called as a witness.

ent laws it is, therefore, in the public domain and can be copied in every detail by whoever pleases. It is true that the trial court found that the configuration of Day-Brite's fixture identified Day-Brite to the trade because the arrangement of the ribbing had, like a trademark, acquired a "secondary meaning" by which that particular design was associated with Day-Brite. But if the design is not entitled to a design patent or other federal statutory protection, then it can be copied at will.

As we have said in *Sears*, while the federal patent laws prevent a State from prohibiting the copying and selling of unpatented articles, they do not stand in the way of state law, statutory or decisional, which requires those who make and sell copies to take precautions to identify their products as their own. A State of course has power to impose liability upon those who, knowing that the public is relying upon an original manufacturer's reputation for quality and integrity, deceive the public by palming off their copies as the original. That an article copied from an unpatented article could be made in some other way, that the design is "nonfunctional" and not essential to the use of either article, that the configuration of the article copied may have a "secondary meaning" which identifies the maker to the trade, or that there may be "confusion" among purchasers as to which article is which or as to who is the maker, may be relevant evidence in applying a State's law requiring such precautions as labeling; however, and regardless of the copier's motives, neither these facts nor any others can furnish a basis for imposing liability for or prohibiting the actual acts of copying and selling. Cf. *Kellogg Co.* v. *National Biscuit Co.*, 305 U. S. 111, 120 (1938). And of course a State cannot hold a copier accountable in damages for failure to label or otherwise to identify his goods unless his failure is in violation of valid state statutory or decisional law requiring the copier to label or take other precautions to

prevent confusion of customers as to the source of the goods.[5]

Since the judgment below forbids the sale of a copy of an unpatented article and orders an accounting for damages for such copying, it cannot stand.

*Reversed.*

MR. JUSTICE HARLAN, concurring in the result.*

In one respect I would give the States more leeway in unfair competition "copying" cases than the Court's opinions would allow. If copying is found, other than by an inference arising from the mere act of copying, to have been undertaken with the dominant purpose and effect of palming off one's goods as those of another or of confusing customers as to the source of such goods, I see no reason why the State may not impose reasonable restrictions on the future "copying" itself. Vindication of the paramount federal interest at stake does not require a State to tolerate such specifically oriented predatory business practices. Apart from this, I am in accord with the opinions of the Court, and concur in both judgments since neither case presents the point on which I find myself in disagreement.

---

[5] As we pointed out in *Sears, Roebuck & Co.* v. *Stiffel Co., ante,* p. 232, n. 9, there is no showing that Illinois has any such law.

*[This opinion applies also to No. 108, *Sears, Roebuck & Co.* v. *Stiffel Co., ante,* p. 225.]