441 F.2d 47
 169 U.S.P.Q. 322
 W. Paul BAILEY, d/b/a Lettergraphics Photo Process Lettering
Service, Plaintiff-Appellant,
v.
LOGAN SQUARE TYPOGRAPHERS, INC., Donald C. Jensen and John
Herman, d/b/a Herman Typographers, Defendants-Appellees.
 No. 18416.
 United States Court of Appeals, Seventh Circuit.
 April 6, 1971.
 
 E. William Bedrava, Chicago, Ill., for plaintiff-appellant.
 Henehan, Donovan & Isaacson, Edward v. Donovan, Kenneth B. Samuels, Altheimer, Gray, Naiburg, Strasburger & Lawton, Lionel G. Gross, wilber H. Boies, Chicago, Ill., for defendants-appellees.
 Before KILEY, KERNER and STEVENS, Circuit Judges.
 STEVENS, Circuit Judge.
 
 
 1
 Plaintiff asserts exclusive rights in over 270 alphabet styles. Defendants contend that the uncopyrighted alphabets, having been published generally, are in the public domain and, therefore, as a matter of federal law, plaintiff's monopoly claims must be rejected. The complaint, charging a wrongful appropriation of intellectual property, was filed in the state court and removed on the ground that it raised questions under the Federal Copyright Act.[1] The district court entered two orders from which plaintiff appeals; on January 20, 1970, he allowed defendants' petition for removal; and on February 16, 1970, he dismissed the complaint.
 
 I.
 
 2
 For purposes of this appeal, we take the facts alleged in the complaint as true. We state them in sufficient detail to identify two separate interests which plaintiff seeks to protect: (1) the design of individual characters in his alphabets; and (2) the aggregate value of his inventory of alphabets, including physical properties such as negatives, used in the photo process printing business. Although there are ambiguities and omissions in the complaint, we understand its essential allegations as follows.
 
 
 3
 Plaintiff, a resident of California, is in the photo process printing business. He has designed certain alphabet styles and compiled others; his inventory comprises over 270 different alphabets. Presumably each includes 26 letters and related symbols of the same style; presumably, also, each style is somewhat different from familiar types, such as Gothic or script.
 
 
 4
 The individual characters in each alphabet are physically reproduced on negatives and positives which may be used in the photo process printing business. These negatives and positives have been retained in plaintiff's exclusive possession and control except to the extent that they have been supplied to 23 other printers who have executed license agreements with plaintiff. These licensees, as well as plaintiff, use the negatives and positives in preparing photo process printing for their respective customers. Thus, individual characters in the alphabets are contained in printed materials which these photo processors sell to the public without restriction.
 
 
 5
 Although each licensee is authorized to reproduce and deal in words and designs composed of letters and designs from plaintiff's alphabet styles,[2] his use of the negatives and positives delivered to him by plaintiff is restricted by the terms of the license agreement. The licensee agrees that title to the physical reproductions will remain in plaintiff, and that they will be returned when the agreement terminates.[3] The licensee also agrees to '* * * protect Licensor against giving to the public all letters of a particular style.' (Par. 9)
 
 
 6
 Plaintiff's 23 licensees are located in various parts of the United States. Defendants are competitors in the printing business. The complaint alleges that defendants wrongfully appropriated a substantial portion of plaintiff's properties in the possession of his New Orleans licensee. The nature of the alleged misappropriation is not entirely clear; alternatively, the complaint implies either a theft or a purchase of negatives in breach of the New Orleans licensee's agreement with plaintiff.
 
 
 7
 Plaintiff seeks damages and an injunction preventing defendants from using or reproducing any of his alphabet designs, styles, and symbols, and requiring defendants to return any of his property, or copies thereof, which may be in their possession.
 
 II.
 
 8
 Plaintiff asserts a right to prevent defendants from copying any part of his alphabets.[4] As asserted, the claim is broad enough to foreclose copying of alphabets which have been freely used in publicly distributed printed matter. Since no federal copyright has been obtained, such copying of published matter may not be prohibited, even if we assume that plaintiff's designs are unique, valuable, and the product of his own creative talent. Cf., Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661; Compco Corp. v. Day-Brite Lighting, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669.
 
 
 9
 The right to copy matter in the public domain is founded on Article I, Section 8 of the Federal Constitution, the copyright laws enacted pursuant thereto, and the Supremacy Clause. See 376 U.S. at 228-232, 84 S.Ct. 784. Accordingly, as a matter of federal law, to the extent that the complaint asked the court to enjoin copying of letters, alphabets, or designs which had been published in printed matter, it stated no claim upon which relief could be granted. Just as Sears had the right to make and vend copies of unpatented Stiffel lamps purchased on the open market, so also do defendants have a federal right to make copies of plaintiff's letters and designs from printed matter distributed in the open market, to assemble complete alphabets from such public materials, and thereafter to use such copies in their own businesses.
 
 
 10
 The decisions in Sears and Compco thus support the district court's rejection of plaintiff's claimed monopoly interest in the design of individual letters which have been published. Different questions are raised, however, by his claim that his interest in the aggregate value of his compilation of alphabets has been invaded.
 
 III.
 
 11
 At least two allegations in the complaint indicate that the inventory of alphabets and negatives has a greater value than the designs of individual letters in printed matter distributed on the open market. Twenty-three businessmen were willing to enter into license agreements requiring substantial payments to plaintiff as consideration for the acquisition of sets of complete alphabets and related physical paraphernalia.[5] Moreover, it is fair to infer that the product of defendants' alleged misappropriation from the New Orleans licensee was not freely available on the open market; otherwise there would have been no motive for the alleged tort.
 
 
 12
 The common law has recognized that the owner of unpublished designs or compilations of material has a valuable interest that may be protected from wrongful invasion apart from the federal copyright and patent laws. See, e.g., Tabor v. Hoffman, 118 N.Y. 30, 23 N.E. 12 (1889); International News Service v. Associated Press, 248 U.S. 215, 250-253, 39 S.Ct. 68, 63 L.Ed. 211 (Brandeis, J., dissenting). Indeed, the Copyright Act itself recognizes the validity of common law protection prior to publication.[6] Although that which is published may be freely copied as a matter of federal right, Sears, Roebuck & Co. v. Stiffel, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661, that which is unpublished, and therefore not available for copying, may be protected from misappropriation without offending any federal law.
 
 
 13
 Plaintiff's complaint alleges conduct other than the mere copying of designs freely available on the open market; federal law does not prevent a state from treating such conduct as tortious. Whether the complaint states a cause of action as a matter of state law may depend on which state's law is applicable,[7] and on a more specific description of both the interest plaintiff seeks to protect and the nature of the alleged tort. We are satisfied, however, that the complaint contains allegations which might support a common law claim that would not be barred by federal law.
 
 
 14
 The question remains as to whether that determination should be made by a federal court or a state court.
 
 IV.
 
 15
 Because the claim for relief against copying individual letters which are in the public domain is foreclosed by the federal copyright, law, defendants petitioned for removal relying on 28 U.S.C. 1338(a) as a basis for federal jurisdiction.[8] The propriety of removal depends on whether plaintiff's claim is one 'arising under' federal law.
 
 
 16
 In American Well Works v. Layne, 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987, the Supreme Court resolved a similar issue. Defendant had removed a tort action commenced in the state court because his defense raised patent law issues. Speaking for the Court, Mr. Justice Holmes explained why removal was improper:
 
 
 17
 'A suit arises under the law that creates the cause of action. The fact that the justification may involve the validity and infringement of a patent is no more material to the question under what law the suit is brought than it would be in an action of contract.' 241 U.S. at 260, 36 S.Ct. at 586.
 
 
 18
 In the present case it is the defense to a substantial portion of the claim, rather than the claim itself, that is based on federal law. It is well settled that a federal prohibition against the prosecution of a state claim is not a basis for removal to the federal court.
 
 
 19
 'By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby.' Gully v. First National Bank in Meridian, 299 U.S. 109, 116, 57 S.Ct. 96, 99, 81 L.Ed. 70.
 
 
 20
 Accord, Tennssee v. Union and Planters' Bank, 152 U.S. 454, 464, 14 S.Ct. 654, 38 L.Ed. 511; Great Northern Ry. Co. v. Alexander, 246 U.S. 276, 282, 38 S.Ct. 237, 62 L.Ed. 713; cf., Avco Corp. v. Aero Lodge 735, 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126. Since plaintiff asserted no claim arising under federal law, 28 U.S.C. 1338(a) is inapplicable, American Harley Corp. v. Irvin Industries, Inc., 27 N.Y.2d 168, 315 N.Y.S.2d 129, 263 N.Ed.2d 552 (N.Y.Ct. of App.1970), cert. denied 401 U.S. 976, 91 S.Ct. 1197, 28 L.Ed.2d 325, and removal was not authorized by 1441(b).[9]
 
 
 21
 Although the rationale of Sears and Compco requires states courts to respect the supremacy of defendants' federal right to copy material in the public domain, nothing in those opinions requires that federal rights to be vindicated exclusively by federal courts.[10] The state courts can be safely trusted to respect 'the supreme Law of the Land,' U.S. Const., Art. VI.
 
 
 22
 The judgment is reversed with direction to remand the case to the Circuit Court of Cook County, Illinois, for further proceedings.
 
 
 
 [1]
 17 U.S.C. 1 et seq.; 28 U.S.C. 1338(a), 1441(b)
 
 
 [2]
 Paragraph 3 of the unexecuted form of license agreement attached as an exhibit to the complaint reads, in part, as follows:
 '3. Licensor hereby grants unto Licensee in consideration of the covenants herein set forth and for the payments provided in Paragraph 5 hereof, the sole and exclusive right to make use of, reproduce, vend, sell and deal in words and designs composed of letters and designs reproduced from said alphabet styles in the following territory. * * *'
 
 
 [3]
 Paragraph 8 of the form license agreement provides:
 '8. Title to any and all negatives, positives and other physical reproductions of alphabet styles delivered by Licensor to Licensee pursuant to this Agreement shall remain with Licensor. Further, Licensee shall at all times during the term hereof retain possession of all negatives, positives and other physical reproductions of said alphabet styles, including original forms from which reproductions are made, except that said property shall be surrendered promptly to Licensor upon termination of this Agreement for whatever cause or reason. In this regard, Licensee agrees to keep confidential all such property of Licensor, and not to disclose to any person, company or firm any or all of such property, without the prior written consent of Licensor. In addition, all systems, techniques, methods and formulae, if any are furnished to Licensee, shall be held in strict confidence for the benefit of Licensor. Finally, Licensee agrees to properly care for all working master negatives and other propety submitted by Licensor so that same may be returned to Licensor upon demand thereof or upon termination of this Agreement or upon replacement thereof due ordinary wear and tear or obsolescence.'
 
 
 [4]
 The complaint alleges in part:
 '4. That the plaintiff owns or otherwise has the exclusive right to the use and benefit of the aforesaid alphabet styles and designs and master alphabet or design negatives.
 'WHEREFORE, the plaintiff prays that this court grant him the following relief: 'a. a temporary and permanent injunction against the defendant enjoining it from reproducing, in any manner, any of the plaintiff's properties mentioned in this Complaint. * * *'
 
 
 [5]
 Of course, it is possible, as defendants contend in their answers, that the whole licensing scheme is merely a facade for an antitrust violation. Clauses in the form license agreement indicate that the defense may have substance. Moreover, the defense of publication as a matter of federal law may have some application to the inventories as well as the individual letters. Compare Lear, Inc. v. Adkins, 395 U.S. 653, 674-675, 89 S.Ct. 1902, 23 L.Ed.2d 610, with 395 U.S. at 676-677, 89 S.Ct. at 1914 (Black, J., dissenting in part). But such defenses are not a basis for dismissing the complaint as insufficient
 
 
 [6]
 17 U.S.C. 2 provides:
 'Nothing in this title shall be construed to annul or limit the right of the author or proprietor of an unpublished work, at common law or in equity, to prevent the copying, publication, or use of such unpublished work without his consent, and to obtain damages therefor.'
 
 
 [7]
 The complaint was filed in an Illinois court against Illinois defendants; it alleges tortious conduct apparently occurring in Louisiana; and is predicate, in part, on interference with contractual rights which were, according to the terms of the license agreement, to be governed by the laws of California
 
 
 [8]
 That section provides:
 'The district court shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases.'
 28 U.S.C. 1441(b) authorizes removal of any civil action 'founded on a claim or right arising under the Constitution, treaties, or laws of the United States * * *.'
 
 
 [9]
 The diverse citizenship of the parties will not support removal since defendants are Illinois residents. See 28 U.S.C. 1441(b). It should also be noted that plaintiff disclaims any reliance on federal law. The problem which might arise from 'appropriate pleading of a pivotal question of federal law' is not present here. See T. B. Harms Company v. Eliscu, 339 F.2d 823, 827 (2d Cir. 1964); Koratron Co. v. Deering Milliken, Inc., 418 F.2d 1314, 1316-1317 (9th Cir. 1969), cert. denied 398 U.S. 909, 90 S.Ct. 1692, 26 L.Ed.2d 68
 
 
 [10]
 Even if the removal could be supported on the theory that federal jurisdiction of the copyright issue was exclusive, the dismissal would necessarily have been without prejudice to the prosecution of any non-federal claim in the state courts. General Inv. Co. v. Lake Shore & M.S. Ry., 260 U.S. 261, 287-288, 43 S.Ct. 106, 67 L.Ed. 244