**COMMODORE IMPORT CORPORATION,**
Plaintiff,

v.

**HIRAOKA & COMPANY, LTD., et al., Defendants.**

No. 71 Civ. 4391.

United States District Court,
S. D. New York.

May 21, 1976.

 

Hauser & Rosenbaum, New York City, for plaintiff; Noel Hauser, New York City, of counsel.

Martin J. Forgang, New York City, for defendant Windsor.

Miller, Montgomery, Spalding & Sogi, New York City, for defendant Hiraoka; Mandeville Mullally, David Thrope, New York City, of counsel.

Kravet, Hoefer & Ryan, New York City, for defendant Azad; Seymour Kravet, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

The plaintiff is a New York corporation, the business of which is the importation and sale of radios. Plaintiff is the owner of the trademark "Commodore" for use on radios. The president of the plaintiff testified that all the radio cabinets in its line are designed by plaintiff's designer and its president; that all such cabinets bear the name "Commodore;" and that the radios in question are manufactured and assembled in the Orient by contractors. Two models of plaintiff's line, Nos. CR 427 and 744–A, had been designed and produced for over ten years prior to the institution of this lawsuit with no change in the outward appearance of the models.

At the time in question, Commodore had ordered a substantial amount of these two models from Hayashi Electric Corporation in Japan. Apparently Hayashi built the radios but for some reason Commodore cancelled the order. Hayashi went bankrupt and its creditors took over its assets. The defendant Hiraoka & Co., Ltd. (hereinafter "Hiraoka") purchased the radios in question from a creditor of Hayashi.

Hiraoka, in turn, sold the radios in question to the defendants Windsor Industries, Inc. and Azad International, Inc. (hereinafter "Azad"), both of which corporations are in the business of importing and selling radios in the United States.

Hiraoka apparently attempted to eradicate the plaintiff's trademark on all of the

items. First, a metal sticker was placed over the word "Commodore" on the front of the cabinet of the CR 427 radios. Second, the words "Commodore" and "Commodore Import Corp." were blacked out on or cut off of the instruction sheet and the guarantee card packed with the radios. Third, on the boxes the references to "Commodore" and "Commodore Import Corp." were covered by stickers measuring approximately 14½″ x 2″ and 5½″ x 1″ bearing the names of the defendants Windsor Industries, Inc. (with its tradename "Windsor") or Azad International, Inc. (with its tradename "Tempest"), as was appropriate.

Apparently, however, at the end of some of the cartons containing the radios was a small sticker measuring approximately ½″ x 1¾″ with the legend "Manufactured for Commodore Import Corp., Brooklyn, New York 11205", which sticker was not covered. According to plaintiff, this type of sticker was allegedly required by United States Federal Trade Commission Regulations. 16 CFR § 500.5.[1] And, of course, if the sticker was there it contained a true statement of fact.

At the outset, it should be noted that there is no "design patent" claim involved in this case.

The statute under which the plaintiff claims defendants are liable to it is 15 U.S.C. § 1125, which in pertinent part forbids the affixing, applying, annexing or use on goods or containers for goods of "a false designation of origin, or any false description or representation." There is nothing on any of the radios or cartons admitted into evidence which can be said to contravene this statute. The radios and cartons were all properly labelled with the names of the defendants who were selling them.

While the radios may have been originally manufactured for the plaintiff, the evi-

dence indicates that the plaintiff cancelled its order with the manufacturer and that the radios were subsequently sold by the creditors of the bankrupt manufacturer.

■ As noted above, there is no design patent at issue in the case. Rather, as noted by a Supreme Court judge in a Kings County, New York Supreme Court action on the same underlying facts, the radios were in the public domain. Apparently, in that case plaintiffs actually conceded that defendants had a right to copy its designs if unprotected. (See Opinion of Beckinella, J., June 29, 1971, Sup.Ct., Kings County, No. 7899/71 at 2). See *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *Compco Corp. v. Day-Brite Lighting*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964).

■ It necessarily follows that if defendants were free to order exact copies of the radios with their own trademarks or names on them, then they were free to purchase those which plaintiff's manufacturer was left with after plaintiff cancelled its order.

Moreover, certain evidence showed that defendants Windsor and Azad were unaware when they purchased the radios in question that the radios had been manufactured for plaintiff. This was apparently so since the individuals doing the purchasing did not, according to their testimony, see the cartons, nor the face of Model CR 427 which apparently bore the "Commodore" name at the times the orders were placed.

The contrary deposition testimony of Kuzuya Sasaki of Hiraoka was that he "presumed" that Mr. Fink of Windsor had seen a sample radio with the name "Commodore" on it and that Mr. Fink had requested that the boxes containing the radios bear the "Windsor" name rather than "Commodore."

---

1.  16 CFR § 500.5(a) provides:

"The label of a consumer commodity shall specify conspicuously the name and place of business of the manufacturer, packer, or distributors. Where the consumer commodity is not manufactured by the person whose name

appears on the label, the name shall be qualified by a phrase that reveals the connection such person has with such commodity, such as 'Manufactured for _____,' 'Distributed by _____' or any other wording that expresses the facts."

There was also a conflict between Sasaki's deposition testimony that "so far as [he] remember[ed]," he had dealt with an elder Mr. Fink and Mr. David Fink's trial testimony that he, not his father, had dealt with Hiraoka in placing the order for the radios.

I find the trial testimony of Fink (Windsor) and Khubani (Azad) to be the more credible versions of what in fact transpired. This is especially so since (1) the order form for Windsor reflects that David Fink, the younger, placed the Windsor order; (2) the order form makes reference to a Windsor Model radio with at least 4 identification numbers, one of which is CR 427, but makes no reference to "Commodore," and (3) Mr. Sasaki's recollection of the events appeared hazy and somewhat imprecise. The same weakness of recollection diminishes the value of Mr. Sasaki's deposition testimony that he had told Mr. Fink that the radios were "Commodore" radios. Finally, it is noteworthy that when the radios arrived in this country they had already been appropriately relabelled as "Tempest" and "Windsor" radios.

■ In any case, whether or not Windsor or Azad knew that the radios they were purchasing had originally been ordered by plaintiff, is irrelevant. If defendants would have been at liberty to order exact replicas of plaintiff's radios, then selling radios originally ordered by plaintiff, which plaintiff eventually declined to purchase,[2] under defendants' labels is not unlawful.

The plaintiff argues that this case does not fall within the *Sears* and *Compco* cases since the defendants' conduct consisted of replacing plaintiff's trademark with their own on already manufactured goods, rather than copying plaintiff's radio. Plaintiff argues that this conduct is especially reprehensible "where the changes are accomplished only partially and in a commercially reprehensible manner." I find to the contrary that the changes were more than adequate to obliterate the plaintiff's name on the CR 427 radio and on the cartons where it was printed. It is unlikely in the extreme that a radio purchaser would pull a piece of metal stripping off the face of his new clock radio to discover the plaintiff's name below.

The major cases on which plaintiff relies in support of its "false designation of origin" charge involved situations where defendants allegedly affixed their names to the products of others for advertising purposes in order to sell their own products which were allegedly of inferior quality. See *Matsushita Electric Corp. v. Solar Sound Systems*, 381 F.Supp. 64 (S.D.N.Y. 1974); *Mastro Plastics Corp. v. Emenee Indus.*, 14 N.Y.2d 498, 248 N.Y.S.2d 223, 197 N.E.2d 620 (1964).

The other case relied upon by plaintiff is *Sutton Cosmetics, Inc. v. Lander*, 455 F.2d 285 (2d Cir. 1972). The plaintiff in that case had purchased a line of cosmetics from the holder of the trademark "Sutton." The seller had refused to sell its trademark. Defendants then came out with a competing line of products using the then abandoned Sutton name, deceptively similar packaging and the slogan "The Sutton Boys are Back . . . ." The court of appeals affirmed the issuance of a preliminary injunction based on an alleged violation of 15 U.S.C. § 1125(a).

In the cases relied upon by plaintiff, a false designation, description or representation was used to pass off a defendant's products as the product of another, or to sell a defendant's own, in these cases inferior, products through use of samples or representations of another's product. Neither of these situations exists in the case at hand. Here there was no substitution of goods, no palming-off, in fact no false statement of any kind.

The closest case factually to the case at hand appears to be *PIC Design Corp. v. Sterling Precision Corp.*, 231 F.Supp. 106, 114–15 (S.D.N.Y.1964), which none of the

---

**2.** Even if plaintiff's contract with its manufacturer contained any exclusivity terms, that case is not before me.

parties has even cited. There the plaintiff sued defendant for copyright infringement and unfair competition based on defendant's alleged copying of plaintiff-manufacturer's trade catalogue. It was alleged, inter alia, that defendant had held itself out to have ready supplies of the catalogued items for immediate delivery. The district court found for the defendant on the copyright and unfair competition claims. The final claim involved the purchase by defendant, through an intermediary, of one of plaintiff's products and its resale after removing plaintiff's name from the product. The district court found no violation of 15 U.S.C. § 1125(a). He also held that the box in which the item was packaged was properly labelled with defendant's name since defendant was the shipper of the product.[3]

The plaintiff's last contention refers to the small sticker which read "Manufactured for Commodore Import Corp. . . . ." The witnesses for Windsor and Azad testified that they had not seen any such stickers on the radios they received. Indeed, defendants' radio exhibits bore no such sticker. While the plaintiff argues that the absence of such a sticker would have precluded the radio's importation, the FTC regulation cited for this proposition, 16 C.F.R. § 500.5, is apparently aimed at distribution, not importation. In fact, it seems less likely that customs agents would stop cartons without the sticker than that they would be troubled by a sticker which appears inconsistent with the "Windsor" or "Tempest" label.[4]

In any case, the tiny sticker bears a true statement of fact. The sticker did not even appear on the exhibits put into evidence by defendants. Moreover, plaintiff is precluded from claiming that defendants held the product out to be plaintiff's since in its answers to interrogatories, December 29, 1972, plaintiff stated that there was no allegation that defendants represented the radios to be plaintiff's products.

Having found that no violation of 15 U.S.C. § 1125 exists, I need not reach the jurisdictional defense raised by defendant Hiraoka that the extraterritorial application of the Lanham Act is inappropriate as to it. See *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633 (2d Cir. 1956).

For all of the reasons set forth in this opinion, I find for the defendants that no violation of 15 U.S.C. § 1125 has been committed.

Settle judgment on notice.

---

**3.** In dictum the district court indicated that a different result "might" have obtained had defendant placed its mark on plaintiff's product. However, this is a far cry from the case at hand where defendants did not purchase the plaintiff's goods directly; but rather purchased radios which had been rejected by plaintiff.

**4.** In fact, it is questionable whether the label in fact complied with the regulation which is seemingly designed to explain the role of the name on the label. Whatever the purpose of the regulation, compliance with FTC regulations is not the issue in this case.