425 F.Supp. 600 (1976)
QUICK POINT PENCIL COMPANY, a Missouri Corporation, Plaintiff,
v.
Jane ARONSON (formerly known as Jane Leopoldi), Defendant.
No. 75-1056 C(1).
United States District Court, E. D. Missouri, E. D.
December 29, 1976.
*601 Walter M. Clark, Thomas E. Wack, William J. Travis, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for plaintiff.
Mark T. Keaney, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for defendant.
MEREDITH, Chief Judge.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
This matter was submitted to the Court on agreed stipulation of facts, exhibits, affidavits and briefs. Plaintiff has sued for declaratory judgment. Both plaintiff and defendant filed motions for summary judgment. There are no facts in dispute. The Court makes the following findings of fact.

FINDINGS OF FACT
1. Plaintiff is a corporation organized and existing under the laws of the State of Missouri, with its principal place of business in Fenton, Missouri.
2. At all relevant times, Plaintiff was and is engaged principally in manufacturing products for the advertising specialty industry.
3. At all relevant times, Defendant was and is a resident of the State of Illinois. Her present married name is Jane Aronson Hossfeld.
4. On June 26, 1956, defendant entered into an agreement with the plaintiff which gives plaintiff the exclusive license and right to make and sell key holders of the type shown in defendant's patent application No. 542,677, which was filed with the United States Patent Office on October 25, 1955. The application was disclosed by the defendant to the plaintiff's officers. The agreement was amended on June 27, 1956. The agreement provides that plaintiff would pay defendant royalties at the rate of 5 percent and if no patent was issued within five years of June 27, 1956 the royalties would be reduced to 2½ percent "as long as you [plaintiff] continue to sell the same."
5. Plaintiff commenced manufacturing key holders in July of 1956 and paid a five percent royalty on gross sales until June 26, 1961, when the royalty was reduced to two and one-half percent. On that date defendant had not been granted a patent on application No. 542,677.
6. On January 27, 1959, the parties executed a supplementary agreement, which provided for royalties on key holders sold in combination with rulers, watches and other items. This agreement did not otherwise alter any terms of the original agreements.
7. Plaintiff paid royalties to defendant in excess of $200,000.00 from July 9, 1957 to September, 1975.
8. Defendant's key holder invention was never patented. In 1956 the United States Patent Office rejected defendant's first application. This was amended and rejected in 1957. An appeal was filed in the Patent Office to the Board of Appeals and on September 27, 1961, the Board of Patent Appeals held this was an unpatentable invention.
9. In the late 1960's and in 1970 competitors of the plaintiff began making key holders similar to the one in question and since no patent has been granted the competitors continued to make these similar key holders without paying royalties.
10. Defendant has demanded the monthly royalty payments for the month of October, 1975 which plaintiff refuses to make. Plaintiff continues to manufacture the key holder; however, its share of the market has declined even though the number *602 of key holders manufactured has increased.

CONCLUSIONS OF LAW
1. This Court has jurisdiction by virtue of 28 U.S.C. § 1332 in view of the fact that plaintiff is a Missouri corporation with its principal place of business in Fenton, Missouri, and defendant is a citizen and resident of the State of Illinois, and the amount of controversy exceeds $10,000.00. This action is for declaratory judgment under 28 U.S.C. § 2201.
2. The language of the agreement is plain, clear and unequivocal and has no relation as to whether or not a patent is ever granted or is not granted. Plaintiff agreed to pay 5 percent royalty to defendant for the first five years and 2½ percent thereafter as long as it manufactured the key holders. Plaintiff continued to pay royalties long after the Patent Office rejected the patent of the defendant. This case is not controlled by Compco Corporation v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964) and Sears, Roebuck & Co. v. Stiffel Company, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964). These cases held that where a patent existed and was held invalid, then a member of the public could copy the article covered by the patent and could not be prevented from copying it.
3. This case is not controlled by Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), where the Court held that a licensee could challenge the validity of a patent. In that case at page 675, 89 S.Ct. at page 1913, the Court stated:
"Consequently, we have concluded, after much consideration, that even though an important question of federal law underlies this phase of the controversy, we should not now attempt to define in even a limited way the extent, if any, to which the States may properly act to enforce the contractual rights of inventors of unpatented secret ideas."
4. In this case the plaintiff had disclosed to it the secret ideas of the defendant inventor. They agreed to pay a royalty and continued to do so until they decided to cease such royalty which was long after the patent was denied. This contract is valid as long as plaintiff continues to manufacture and sell the key holders. If plaintiff desires to cease paying royalties, it must also cease making and selling the key holders.
5. Judgment will be entered in favor of defendant and against the plaintiff.