**William E. MITCHELL, Plaintiff,**

v.

**PENTON/INDUSTRIAL PUBLISHING COMPANY, INC., Defendant.**

No. C79–1863.

United States District Court,
N. D. Ohio.

Dec. 27, 1979.

Lawrence E. Evans, Jr., Gunn & Lee, Houston, Tex., for plaintiff.

Arnold, White & Durkee, Houston, Tex., Charles R. Rust, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

WILLIAM K. THOMAS, District Judge.

This action, originally filed in the United States District Court for the Southern District of Texas, was transferred to this court. It is currently before the court on defendant's motion to strike [1] Count II of plaintiff's complaint,[2] which charges defendant with the common law tort of "unfair competition."

Plaintiff's complaint contains two counts and is brought pursuant to 28 U.S.C. § 1338(a) and (b). Count I presents a claim for copyright infringement and alleges that plaintiff authored "an original" book entitled *Records Retention* which is "copyrightable subject matter under the laws of the United States." [3] Plaintiff alleges that the book

> provides a systematic and accurate guideline for the destruction and/or retention of business records which classified and simplified more than 1300 governmental regulations and statutes.

Plaintiff further alleges that he "spent many long hours" researching and preparing data which he compiled "by sending a questionnaire" to numerous federal and state agencies. Plaintiff then "followed up

---

1. Defendant's "Motion to Strike" is treated as a motion to dismiss within Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Courts have not been willing to determine disputed and substantial questions of law or the legal sufficiency of pleadings upon a motion to strike under Fed.R.Civ.P. 12(f). See *Trio Process Corp. v. L. Goldstein's Sons, Inc.*, 250 F.Supp. 926 (E.D.Pa. 1966); *Tivoli Realty v. Paramount Pictures*, 80 F.Supp. 800 (D.C.Del.1948).

2. Defendant's motion was initially directed at plaintiff's original complaint. Thereafter, plaintiff filed a "First Supplemental Complaint" before responding to the merits of defendant's motion. The court grants plaintiff leave to file

the "Supplemental" complaint and treats it as an amendment of Count II under Fed.R.Civ.P. 15(a). Defendant's motion was not a "responsive pleading" under Fed.R.Civ.P. 15(a), and plaintiff therefore was entitled to amend as a matter of course. 3A Moore's Federal Practice ¶ 15.07[2], p. 43 (2d ed. 1979).

3. Paragraph 3.2 of the complaint alleges that plaintiff "has complied with the [Copyright] Act . . . governing . . . the exclusive rights and privileges . . . of the work *Records Retention* and has received from the Register of Copyrights the . . . Certificates of Registration."

with additional correspondence and long distance telephone interviews" with the government agencies. Paragraph 3.9 of Count I states that: .

Defendant Penton has . . . infringed one or more of [plaintiff's] copyrights by publishing and placing upon the market an article entitled, "Records Maintenance: Prevent a Paper Pileup" . . . [which] was on information and belief copied largely from plaintiff's copyrighted book. . . .

Count II, as amended, presents several examples of recommended retention periods in plaintiff's copyrighted work and lists "similar titles and recommended retention periods in defendants' article 'Records Maintenance.'" It says that in defendants' article, numerous other portions are "coincidentally . . . identical or similar to the portions of plaintiff's book *Records Retention.*" Plaintiff then alleges:

Certain portions of the plaintiff's copyrighted work contains factual information compiled by Mitchell at great personal expense and effort. Defendant Penton has misappropriated many of the factual recitations contained within *Records Retention.* This misappropriation has saved Penton a tremendous amount of time, effort and money in preparation of their article, "Records Maintenance." Defendant Penton did little original research; instead they relied on the information previously gathered by Mr. Mitchell. As a result of this misappropriation, Penton has gained a headstart or commercial advantage which is unfair and unjust and which should not be countenanced by a court of equity.

Count II concludes that defendant has "willfully and deliberately misappropriated certain information contained [in plaintiff's book]" and "traded upon the good name and reputation of plaintiff, all to plaintiff's damage and detriment."

### I.

Relying on *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) and *Compco Corp. v.*

*Day-Brite Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), Penton argues:

The U.S. Supreme Court in 1964 clearly enunciated the principle that, once Congress has enacted statutes for the protection of ideas, federal preemption comes into play. There is then no room for protection by the common law of the States, such as the law of unfair competition, for the mere copying of a publicly distributed item.

While recognizing that these cases dealt with federal protection under the patent laws, Penton notes that "the same principle applies when the protection is given by the federal copyright statutes."

In *Sears*, the Court set aside a district court injunction against Sears, affirmed by the Seventh Circuit. While invalidating a design patent of Stiffel's pole lamp, the district court enjoined Sears "from unfairly competing with [Stiffel] by selling or attempting to sell pole lamps identical to or confusingly similar to" Stiffel's lamp. In reversing and granting final judgment, the Court reasoned:

What Sears did was to copy Stiffel's design and to sell lamps almost identical to those sold by Stiffel. This it had every right to do under the federal patent laws . . . To allow a State by use of its law of unfair competition to prevent the copying of an article which represents too slight an advance to be patented would be to permit the State to block off from the public something which federal law has said belongs to the public.

*Sears, supra*, at 231, 84 S.Ct. at 789.

The same ruling was reached in *Compco.* The district court invalidated Sun-Brite's design patent of fluorescent lighting fixtures but enjoined Compco "from unfairly competing with [Sun-Brite] by the sale or attempted sale of reflectors identical to, or confusingly similar to" the fixtures made by Day-Brite. The Seventh Circuit affirmed. The Supreme Court reversed and granted judgment in favor of Compco.

Significantly, the Court noted:

A State of course had power to impose liability upon those who, knowing that the public is relying upon an original manufacturer's reputation for quality and integrity, deceive the public by palming off their copies as the original.

*Compco, supra*, at 238, 84 S.Ct. at 782. Thus, the Court recognizes that a state common law unfair competition claim, based on one party's deceptive palming off of an article or work product and not merely upon the copying of another person's article or product, is not preempted by the federal patent laws.[4] It remains to be considered whether the new copyright law [5] has effected this exception to the preemptive application of the Supremacy Clause.

In *Goldstein v. California*, 312 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973), the Court rejected the argument that "Congress so occupied the field of copyright protection as to preempt all comparable state action," noting that the Congress, the Copyright Office and the courts agreed that under the existing law, there was no preemption. That is no longer true. The new Copyright Act establishes preemption with respect to other laws. Section 301(a) provides:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

This language preempts and abrogates all legal and equitable rights arising under the common law or statutes of any state

(1) that are equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106 [6] in works of authorship that are fixed in a tangible medium of expression, and

(2) come within the subject matter of copyright as specified by Section 102 and 103,[7] whether created before or after that

---

4. 28 U.S.C. § 1338(b) still expressly gives a district court jurisdiction to join a claim of unfair competition with "a substantial and related claim under the copyright, patent . . . laws."

5. Title 17 of the United States Code was "revised in its entirety" by The Copyright Act of 1976, Pub.L. No. 94–553, § 101 *et seq.*, 90 Stat. 2572, effective January 1, 1978.

6. Section 106 enumerates the exclusive rights protected by copyright and provides in part:
   Subject to sections 107 through 108, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
   (1) to reproduce the copyrighted work in copies or phonorecords;
   (2) to prepare derivative works based upon the copyrighted work;
   (3) to distribute copies of the phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending.

7. Sections 102 and 103 define the subject matter covered by the Act. Section 102 provides:
   (a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:
   (1) literary works;
   (2) musical works, including any accompanying words;
   (3) dramatic works, including any accompanying music;
   (4) pantomimes and choreographic works;
   (5) pictorial, graphic, and sculptural works;
   (6) motion pictures and other audiovisual works; and
   (7) sound recordings.
   (b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.
   Section 103 provides:
   (a) The subject matter of copyright as specified by section 102 includes compilations and derivative works, but protection for

date and whether published or unpublished.

To sustain defendant's motion to dismiss, it must be found that plaintiff's second cause of action, asserting that "Defendant Penton has willfully and deliberately misappropriated certain information contained in the work, *Records Retention*," is a common law claim that is preempted by section 301(a). However, section 301(a) must be construed together with section 301(b) which reads:

> (b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—
>
> (1) subject matter that does not come within the subject matter of copyright as specified by section 102 and 103, including works of authorship not fixed in any tangible medium of expression; or
>
> *     *     *     *     *     *
>
> (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

By this language, Congress makes it clear that certain "rights or remedies under the common law or statutes of any State" are not annulled nor limited by the new copyright law. The legislative history discloses that the Conference substitute adopted the House amendment of section 301. This House amendment had "deleted the clause of section 301(b)(3) ". . . enumerating illustrative examples of causes of action,[8] such as certain types of misappropriation, not preempted under section 301." House Conference Report No. 94–1733, 94th Cong., 2d Sess. 79 (1976). In clause (3), Congress thus generally categorizes causes of action

that the new copyright law does not preempt.

By deleting the examples (set forth in the margin, n.8), Congress must have decided it was better to permit the states in the first instance through statutory or decisional law to specify or fashion "rights or remedies" that fall within clause (3), subject, of course, to court application of the copyright law limitations of clause (3). While deleted from clause (3), those causes of action remain illustrative of "certain types of misappropriation, not preempted under section 301." However, these exemplified causes of action could only be brought as a pendent state claim in conjunction with a copyright infringement action if indeed the pendent claim was recognized as a legally sufficient state action and provided the claim did not involve a legal or equitable right that is "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106."

If the plaintiff's second cause of action involved unfair competition by "passing off", it would constitute a cause of action which is available under Ohio law (were this the governing law). Under Fed.R.Civ.P. 8(e)(2), the plaintiff can plead inconsistent and alternative facts and claims. Moreover, a "passing off" claim would not concern the violation of legal or equitable rights that are "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." However, plaintiff's second cause of action is not drafted as a "passing off" claim but rather as a broad "misappropriation" claim.

The undoubted right of the plaintiff to plead in the alternative may here be asserted only if the alternative pleading of "misappropriation" is legally sufficient. Plaintiff argues that "misappropriation" is an

---

a work employing preexisting material in which copyright subsist does not extend to any part of the work in which such material has been used unlawfully.

(b) The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting materi-

al. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

8. The "illustrative examples" include causes of action "involving activities such as false labeling, fraudulent representation and passing off. . . . ."

unpreempted state claim that can be joined with his copyright infringement claim in Count I. While the House Report says that "'misappropriation' is not necessarily synonymous with copyright infringement," the court concludes that the plaintiff's attempt in the complaint, as amended, to plead a claim that is distinctive from copyright infringement and unpreempted by section 301(a) is unsuccessful.

Should the plaintiff prevail on its first cause of action demonstrating that its registered copyrights have been infringed, and the defendants fail in any defense and counterclaim of copyright invalidity, plaintiff's count of "misappropriation," an alternative claim by plaintiff's own characterization would become redundant. However, should plaintiff Mitchell fail to prove infringement or if infringed, defendant should show that the copyrights are invalid, then *Sears* and *Compco* come into play. These cases hold that once patent protection (similarly copyright protection) is denied, the alleged infringer has "every right to" copy the patented product or copyrighted work of authorship. Plaintiff alleges "misappropriation" by Penton of "many of the factual recitations contained within Records Retention." If proved, such a claim asserts in effect, if not in substance, what Stiffel and Sun-Brite unsuccessfully claimed in *Sears* and *Compco*.

Under this disposition, namely that "misappropriation" as claimed by the plaintiff does not circumvent *Sears* and *Compco*, it is unnecessary to reach the further question of whether plaintiff has or could frame a claim of "misappropriation" that is actionable under the law of the state where the alleged tort took place.

Defendant Penton's motion to dismiss the second count, as amended, is granted without prejudice to the plaintiff to assert a pendent state claim, consistent with this opinion and applicable state law.

IT IS SO ORDERED.