515 So.2d 220 (1987)
BONITO BOATS, INC., Appellant,
v.
THUNDER CRAFT BOATS, INC., Appellee.
No. 68829.
Supreme Court of Florida.
November 12, 1987.
John S. Schoene of Baker & Hostetler, Orlando, for appellant.
Hal K. Litchford of Litchford, Christopher & Milbrath, P.A., Orlando, for appellee.
Tomas M. Russell and John A. Heller of Hopkins & Sutter, Chicago, Ill., amicus curiae for Nat. Marine Mfrs. Ass'n.

CORRECTED OPINION
GRIMES, Judge.
We have for review Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 487 So.2d 395 (Fla. 5th DCA 1986), in which the district court found section 559.94, Florida Statutes (1985),[*] unconstitutional. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
*221 Bonito filed suit alleging that Thunder Craft unlawfully duplicated an unpatented Bonito boat design using the direct molding process in violation of section 559.94. The trial court dismissed the complaint, finding section 559.94 preempted by federal patent law. The district court affirmed, finding that federal patent law permits unrestricted copying of unpatented articles, relying on Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964).
In Sears, Sears, Roebuck and Company had copied and sold pole lamps which had been originally designed and marketed by Stiffel Company. In reversing a ruling that Sears was guilty of unfair competition under Illinois law, the Court said:
In the present case the "pole lamp" sold by Stiffel has been held not to be entitled to the protection of either a mechanical or a design patent. An unpatentable article, like an article on which the patent has expired, is in the public domain and may be made and sold by whoever chooses to do so. What Sears did was to copy Stiffel's design and to sell lamps almost identical to those sold by Stiffel. This it had every right to do under the federal patent laws. That Stiffel originated the pole lamp and made it popular is immaterial. "Sharing in the goodwill of an article unprotected by patent or trade-mark is the exercise of a right possessed by all  and in the free exercise of which the consuming public is deeply interested." Kellogg Co. v. National Biscuit Co., supra, 305 U.S. 111 at 122 [59 S.Ct. 109 at 115, 83 L.Ed. 73 (1938)]. To allow a State by use of its law of unfair competition to prevent the copying of an article which represents too slight an advance to be patented would be to permit the State to block off from the public something which federal law has said belongs to the public.
376 U.S. at 231-32, 84 S.Ct. at 789. In Compco, which involved a similar issue with respect to a lighting fixture, the Court observed:
Today we have held in Sears, Roebuck & Co. v. Stiffel Co., [376 U.S. 225, 84 S.Ct. 784], that when an article is unprotected by a patent or a copyright, state law may not forbid others to copy that article. To forbid copying would interfere with the federal policy, found in Art. I, § 8, cl. 8, of the Constitution and in the implementing federal statutes, of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain. Here Day-Brite's fixture has been held not to be entitled to a design or mechanical patent. Under the federal patent laws it is, therefore, in the public domain and can be copied in every detail by whoever pleases.
376 U.S. at 237-38, 84 S.Ct. at 782.
The suggestion that a trio of more recent Supreme Court cases has modified the Sears/Compco doctrine cannot withstand a careful analysis.
The issue in Goldstein v. California, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973), was the constitutionality of a California statute that imposed criminal penalties for the duplication of recorded musical performances known as record piracy. Thus, the federal copyright laws rather than the federal patent laws were implicated. The then existing copyright act did not expressly deal with record piracy. Therefore, the Supreme Court concluded that Congress' silence in this respect freed the states to regulate in that area. However, the Court was careful to distinguish "mechanical configurations" protected by the *222 patent law and "writings" which were subject to the copyright law, when it said:
In regard to mechanical configurations, Congress had balanced the need to encourage innovation and originality of invention against the need to insure competition in the sale of identical or substantially identical products. The standards established for granting federal patent protection to machines thus indicated not only which articles in this particular category Congress wished to protect, but which configurations it wished to remain free. The application of state law in these cases to prevent the copying of articles which did not meet the requirements for federal protection disturbed the careful balance which Congress had drawn and thereby necessarily gave way under the Supremacy Clause of the Constitution. No comparable conflict between state law and federal law arises in the case of recordings of musical performances. In regard to this category of "Writings," Congress has drawn no balance; rather, it has left the area unattended, and no reason exists why the State should not be free to act.
Id. at 569-70, 93 S.Ct. at 2316 (footnote omitted).
The question before the Court in Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974), was whether state trade secret protection is preempted by operation of the federal patent laws. Trade secret protection can only arise in a private context before an article is placed in the public domain. This protection operates only against a limited number of insiders who have gained exposure to the secret during the development of the article. Trade secret laws do not purport to give the owner or exploiter the right to restrain other competitors from copying the secret once it is placed in the public domain. Kewanee held only that neither federal patent laws nor their underlying policies mandated that the holder of a trade secret must be subjected to the risk of its disclosure and use by the insiders with whom he deals. The Court stated:
[T]he policy that matter once in the public domain must remain in the public domain is not incompatible with the existence of trade secret protection. By definition, a trade secret has not been placed in the public domain.
416 U.S. at 484, 94 S.Ct. at 1887 (footnote omitted). Section 559.94, Florida Statutes (1984), is not directed to trade secrets but rather operates to impede the right of competitors to duplicate an unpatented article in the public domain.
Aronson v. Quick Point Pencil Co., 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979), dealt with a contract to pay royalties for the right to sell an article which later proved to be unpatentable. In upholding the continuing requirement to pay royalties, the United States Supreme Court pointed out that enforcement of the contract did not conflict with the patent laws because anyone could copy the article. At the same time, the Court reaffirmed the principle that:
[A] state may not forbid the copying of an idea in the public domain which does not meet the requirements for federal patent protection.
Id. at 264, 99 S.Ct. at 1100.
Pursuant to the Sears/Compco doctrine, when an article is introduced into the public domain, only a patent can eliminate the inherent risk of competition and then but for a limited time. Yet, the dissent purports to uphold the statute because it outlaws only one type of duplication. Either an article in the public domain is fully protected by patent or it may be copied in any manner. The United States Supreme Court has never ruled that the states may selectively enact barriers against some methods of copying unpatented articles.
Admittedly, the United States Court of Appeals in Interpart Corp. v. Italia, 777 F.2d 678 (Fed. Cir.1985), held a substantially similar California statute was not preempted by federal patent law. As the basis for its ruling, the court said:
[T]he statute ... does not give the creator of the product the right to exclude others from making, using, or selling the product as does the patent law. The statute does not preclude one from photographing, *223 measuring, or in any way utilizing the concept of the design of the product. It does not preclude copying the product by hand, by using sophisticated machinery, or by any method other than the direct molding process... .
The statute prevents unscrupulous competitors from obtaining a product and using it as the "plug" for making a mold. The statute does not prohibit copying the design of the product in any other way; the latter, if in the public domain, is free for anyone to make, use, or sell.
Id. at 684-85.
With all due respect, this is a misapplication of the Sears/Compco doctrine. Regardless of whether we approve of one capitalizing upon the fruits of another's labor, a competitor is not "unscrupulous" in the eyes of the patent law if he copies someone else's unpatented invention, irrespective of the manner employed to make the copy.
Apparently, the direct molding process is an efficient and inexpensive way of duplicating boat hulls. Otherwise, the legislation, which is intended to protect the original manufacturers of boat hulls, would never have been enacted. There is no indication that section 559.94 was passed to prevent mislabelling or deceptive trade practices. The suggestion that it is "unfair" for one to copy the work of another through the process of making a mold has already been taken into consideration by the federal patent laws which maintain the balance between protecting inventions and the desirability of free competition. Article I, section 8 of the United States Constitution empowered Congress to establish laws with respect to inventions and the states are precluded from second-guessing these laws by placing unauthorized restrictions upon their implementation.
We hold section 559.94 to be unconstitutional and affirm the decision of the district court of appeal.
EHRLICH, BARKETT and KOGAN, JJ., concur.
SHAW, J., dissents with an opinion, in which McDONALD, C.J., and OVERTON, J., concur.
SHAW, Justice, dissenting.
Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and its companion case, Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), stand for the general rule that
when an article is unprotected by a patent or a copyright, state law may not forbid others to copy that article. To forbid copying would interfere with the federal policy, found in Art. I, § 8, cl. 8, of the Constitution and in the implementing federal statutes, of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain.
376 U.S. at 237, 84 S.Ct. at 782. Sears and Compco each involved state unfair competition laws prohibiting the sale of identical copies of unpatented items. The state laws had the effect of removing the unpatented items from the public domain, thus, conflicting with federal patent policy. In contrast, section 559.94, Florida Statutes (1983), does not prohibit the copying of an unpatented item. It prohibits one method of copying; the item remains in the public domain.
The United States Court of Appeals for the Federal Circuit recently found in Interpart Corp. v. Italia, 777 F.2d 678 (Fed. Cir.1985), that a substantially similar California statute was not federally preempted, reasoning that
the statute ... does not give the creator of the product the right to exclude others from making, using, or selling the product as does the patent law. The statute does not preclude one from photographing, measuring, or in any way utilizing the concept of the design of the product. It does not preclude copying the product by hand, by using sophisticated machinery, or by any method other than the direct molding process... .
The statute prevents unscrupulous competitors from obtaining a product and using it as the "plug" for making a mold. *224 The statute does not prohibit copying the design of the product in any other way; the latter, if in the public domain, is free for anyone to make, use, or sell.
Id. at 684-85. The majority finds that the court of appeals misapplied the Sears/Compco doctrine. I disagree, and find the decision highly persuasive. The United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over appeals from final federal district court decisions arising under patent law. 28 U.S.C.S. § 1295(a)(1) (1986). "In creating this nationwide subject matter jurisdiction in the area of patent appeals, it was the intention of Congress to provide a forum that would increase doctrinal stability in the area of patent law and reduce forum shopping, which was considered to be common in patent litigation." Cable Electric Products, Inc. v. Genmark, Inc., 770 F.2d 1015, 1032 (Fed. Cir.1985).
The majority points out that "[t]he United States Supreme Court has never ruled that the states may selectively enact barriers against some methods of copying unpatented articles," slip op. at 5. The Court has ruled that "states are free to regulate the use of such intellectual property in any manner not inconsistent with federal law." Aronson v. Quick Point Pencil Co., 440 U.S. 257, 262, 99 S.Ct. 1096, 1099, 59 L.Ed.2d 296 (1979) (citations omitted). Aronson involved a contract to pay royalties allegedly in conflict with federal patent law. Although the majority seeks to distinguish Aronson and cases cited therein, the Court's discussion of the Sears/Compco doctrine and general propositions of intellectual property law apply to patent law as well as other areas of intellectual property law. I would not read this case as restrictively as does the majority.
This Court has a duty to resolve all doubt as to a statute's validity in favor of its constitutionality. See e.g. Falco v. State, 407 So.2d 203 (Fla. 1981); Horsemen's Benevolent and Protective Association, Florida Division v. Division of Pari-Mutuel Wagering Department of Business Regulations, 397 So.2d 692 (Fla. 1981); Ison v. Zimmerman, 372 So.2d 431 (Fla. 1979); State v. Williams, 343 So.2d 35 (Fla. 1977). Given the United States Supreme Court's silence on the precise issue presented in this case and the United States Court of Appeals decision in Interpart, I would reverse the district court's decision and find section 559.94 valid and not preempted by federal patent law.
McDONALD, C.J., and OVERTON, J., concur.
NOTES
[*] § 559.94, Fla. Stat. (1985):

(1) As used in this section, the term:
(a) "Direct molding process" means any direct molding process in which the original manufactured vessel hull or component part of a vessel is itself used as a plug for the making of the mold, which mold is then used to manufacture a duplicate item.
... .
(2) It is unlawful for any person to use the direct molding process to duplicate for the purpose of sale any manufactured vessel hull or component part of a vessel made by another without the written permission of that other person.
(3) It is unlawful for any person to knowingly sell a vessel hull or component part of a vessel duplicated in violation of subsection (2).
(4) Any person who suffers injury or damage as the result of a violation of the provisions of this section may bring an action in circuit court for an injunction prohibiting such violations... .