OPINION OF THE COURT
John A. K. Bradley, J.
The plaintiffs Murray Burnett and Joan Alison seek summary judgment in this action for declaratory judgment to enjoin defendants from further misappropriation of plaintiffs’ rights to characters in plaintiffs’ play “Everybody Comes to Rick’s” and for compensatory and punitive damages for prior unlawful and unauthorized use of plaintiffs’ property rights, including but not limited to character rights and sequel rights.
The defendants Warner Bros. Pictures, Inc. (Warner) and National Broadcasting Company, Inc. (NBC),* have cross-moved for summary judgment on various grounds.
This action arises out of NBC’s 1983 broadcast of five episodes of a television series entitled “Casablanca.” The series was produced by the defendant Warner.
Burnett and Alison are the authors of the unproduced play “Everybody Comes to Rick’s”. On January 12, 1942, the plaintiffs entered into an agreement with Warner to sell the play for $20,000. The agreement entitled “Assignment of All Rights” states that the plaintiffs,
“give, grant, bargain, sell, assign, transfer and set over all now or hereafter existing rights of every kind and character *554 whatsoever pertaining to said work, whether or not such rights are now known, recognized, or contemplated and the complete and unconditional and unencumbered title in and to said work for all purposes whatsoever.
“2. I further give * * * the absolute and unqualified right to use said work in whole or in part, in whatever manner said purchaser may desire, including (but not limited to) the right to make, and/or cause to be made, literary, dramatic, speaking stage, motion picture, photo play, television, radio, and/or other adaptations of every kind and character, of said work, or any part thereof; and for the purpose of making or causing to be made such adaptations or any of them the purchaser may adapt, arrange, change, novelize * * * add to and subtract from said work, and/or title”.
Warner produced and released the movie “Casablanca”, starring Humphrey Bogart and Ingrid Bergman based on the plaintiffs’ play.
In 1955-1956 Warner produced a television series entitled “Casablanca”. Ten half-hour episodes of the series aired over NBC. On May 7,1983, Warner produced the new “Casablanca” television series referred to above.
In 1983, after the new series had begun to run, the plaintiffs wrote to NBC alleging that they owned the rights to the characters in the play and that the use of such characters in the television series was unlawful. On June 21, 1983 (approximately two and a half months after the first episode was aired and approximately six weeks after the last episode) plaintiffs brought an action (no action had been brought after the 1955 television series).
The plaintiffs contend that:
(1) Defendants have breached the 1942 contract between Warner and plaintiffs by exercising rights not granted in the contract;
(2) Defendants have misappropriated rights commonly retained by and reserved to creators;
(3) Defendants have been unjustly enriched by unauthorized use of and dealing in property rights belonging to plaintiffs;
(4) Defendants have unfairly competed with plaintiffs;
(5) Defendants have fraudulently misrepresented themselves as being holders of certain rights which belong to plaintiffs;
(6) Defendants have failed to compensate plaintiffs for utilizing rights belonging to plaintiffs; and
*555 (7) Defendants have damaged plaintiffs’ ability to exercise their rights by
(a) conversion of said rights
(b) creating poor quality product which lessens the value of said rights.
For the reasons discussed below, this action must be dismissed without prejudice because this court lacks subject matter jurisdiction to hear and determine this controversy.
In 1976 Congress amended the copyright laws to preempt the patchwork quilt State regulations in that area of law. (17 USC § 301; Strout Realty v Country 22 Real Estate Corp., 493 F Supp 997 [WD Mo 1980]; Editorial Photocolor Archives v Granger Collection, 61 NY2d 517 [1984].)
This statute provides:
“§ 301 * * *
“(a) On and after January 1,1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by * * * sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.
“(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to —
“(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or
“(2) any cause of action arising from undertakings commenced before January 1, 1978; or
“(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.”
In conjunction therewith, Congress stripped State court jurisdiction by designating the District Courts as having exclusive jurisdiction in copyright cases (28 USC § 1338).
In order to come within the preemption, a cause of action must not fall within section 301 (b) (1), (2) or (3).
*556 The subdivision (b) (1) exclusion is not applicable since no one disputes that the subject matter herein comes within the subject matter of copyright.
With respect to subdivision (b) (2), while an argument could be constructed that the date of the original work should control, we are persuaded that the better view focuses upon the commencement date of enterprises alleged to infringe the holders’ right.
In Bromhall v Rorvik (478 F Supp 361 [ED Pa 1979]), the author of a doctoral thesis brought an action against the author and publisher of a book who used the material from the doctoral thesis. The court held that “only the publication of the book [would] give rise to an action for infringement, and that publication did not occur (or ‘commence’) until after January 1,1978” (p 366; Burke v National Broadcasting Co., 598 F2d 688, 691, n 2 [1st Cir], cert denied 444 US 869; Birnbaum v United States, 588 F2d 319, 326, n 15 [2d Cir 1978], holding that 17 USC § 301 [b] [2] preserves rights under State law for causes of action arising before Jan. 1, 1978; Strout Realty v Country 22 Real Estate Corp., supra; but see, Orth-O-Vision v Home Box Off., 474 F Supp 672 [SDNY 1979]).
Here, plaintiff alleges that the offending television series was produced in 1983. Thus, the subdivision (b) (2) exclusion is not applicable.
So too is subdivision (b) (3) not applicable. While plaintiff purports to state a claim for breach of contract, in fact plaintiffs allege that defendants infringed their rights precisely because such rights were never contracted away. While defendants will no doubt eventually defend on the merits by referring to the contract of assignment, the nature of a potential defense does not defi ne original jurisdiction and the Federal courts can and do entertain State lay/ questions in Federal copyright actions. (See, Bartsch v Metro-Goldwyn-Mayer, 391 F2d 150, 154 [2d Cir 1968], cert denied 393 US 826.)
While plaintiffs’ complaint is exhaustive in attempting to assert State law claims, the court concludes that each of such claims is predicated on the notion that plaintiffs’ rights in the play were never surrendered and defendants have infringed. Such claims are equivalent to the rights protected under Federal law. (See, Harper & Row v Nation Enters., 501 F Supp 848, 852 [SDNY 1980], mod on other grounds 723 F2d 195; Mitchell v Penton Indus. Pub. Co., 486 F Supp 22, 26 [ND Ohio 1979]; Orth-O-Vision v Home Box Off., 474 F Supp 672, 684 [SDNY 1979], supra.)
*557 Thus, plaintiffs’ claims are preempted and must be dismissed.
This dismissal is, of course, without prejudice. Plaintiffs may play it again but they must do it in the United States District Court.

 David Wolper Productions, Inc., a named defendant has been dropped as a defendant in this suit.